570 P.2d 1289

The STATE of Arizona, Appellee,

v.

Robert Eugene GRUBBS, Appellant.

No. 2 CA–CR 1028.

Court of Appeals of Arizona, Division 2.

Sept. 13, 1977.

Rehearing Denied Oct. 26, 1977.

Review Denied Nov. 8, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Georgia B. Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

John R. Chalmers, Safford, for appellant.

## OPINION

RICHMOND, Judge.

Appellant was convicted of first-degree rape in violation of A.R.S. § 13–611.

On appeal he urges:

1. The trial court erred in not striking direct testimony of the complaining witness, which would have eliminated requisite elements of the crime and resulted in a directed verdict of acquittal.

2. The trial court erred in providing an interpreter for the complainant who had demonstrated ample facility in English.

We find no merit in either contention, and affirm.

The pertinent parts of A.R.S. § 13–611 provide that rape occurs:

"2. Where the female resists, but her resistance is overcome by force or violence."

or

"3. Where the female is prevented from resisting by threats of immediate and great bodily harm, accompanied by apparent power of execution, . . . ."

Appellant argues that his right to cross-examine, as guaranteed by the Sixth Amendment to the United States Constitution,[1] was denied when the complaining witness refused to answer his counsel's questions relating to the elements of force, threat, and apparent ability to use force, and that the trial court erred in denying a motion to strike the related direct testimony. The record, however, discloses no such Sixth Amendment violation.

While the complainant's refusal to answer was frustrating and often arbitrary, it did not result in an unreasonable curtailment of appellant's right to confrontation sufficient to require the trial court to strike the direct testimony. On direct examination, she testified:

"Q. Did he threaten you?

"A. Yes.

"Q. What did he say to you?

"A. He just said, he won't take long. And I started screaming. He threw me on the ground, and then he covered my mouth. And he pulled my pants down

---

1. *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *State v. Narten,* 99 Ariz. 116, 407 P.2d 81 (1965).

and down my underwear. Then he—He was holding my hands backwards. And I was just trying to kick and scream, but I didn't do no good.

"Q. That's okay.

"A. And then—I was trying to charge out to my living room door, but he blocked the door there. Then he tossed me on the ground and . . .."

During cross-examination, the complainant repeatedly refused to answer questions:

"Q. . . . the person who did these things to you, you said threatened you. Do you remember saying that?

"A. Yes.

"Q. What did the person say to you that was a threat?

"A. (No audible response.)

 * * * * * *

"Q. Okay. Do you know what it means to threaten somebody?

"A. (No audible response.)

"Q. When the man was in your house, did he say he was going to do anything bad to you?

"A. (No audible response.)

"Q. Did he say he was going to hurt you? Or, did he not say anything about that?

"A. (No audible response.)"

The prosecuting attorney finally asked the court for permission to bring in an interpreter. She gave the following explanation:

"On the basis that [the victim] has been unable as we've seen today and on last Wednesday to communicate to us like we communicate with each other, obviously, regardless of what the reason is for that. She feels since—she feels more comfortable speaking in the Apache language and feels that while she is flat unable to get up there and explain in English what has happened, she feels that she can do it through this Interpreter."

Over appellant's objection, permission was granted. The prosecuting attorney was then permitted to resume direct examination through the interpreter.

"Q. [By prosecuting attorney] Did he threaten you?

"THE INTERPRETER: He told me that he was going to come back tomorrow or even the next day whenever her—my husband would be going off to work; so I got scared, and I wént to my husband's boss.

"Q. Did he—Beside raping you, did he do anything else to hurt you?

"THE INTERPRETER: Like hitting me?

"Q. Yes.

"THE INTERPRETER: I can't remember too clearly. I got frightened."

Appellant's counsel then resumed cross-examination:

"Q. . . . What does the word 'threatened' mean to you?

"THE INTERPRETER: I'm getting confused when you ask me that question. I was just frightened at the time."

 * * * * * *

"Q. . . . What did the man say to you that you felt was a threat?

"THE INTERPRETER: He scared me by coming into the kitchen door. He said he was going to be back tomorrow after the incident occurred."

 Appellant has the right to cross-examine on every element of proof fundamental to the state's case. Thus when the state offered proof of both force and threat, as set out in the statute, the defendant had a constitutional right to cross-examine in both areas. The record does not support appellant's contention that this right was abridged. The complaining witness on two separate occasions, without objection, was permitted to answer whether appellant had threatened her. Thereafter on cross-examination she was either unable or unwilling to respond to questions calling for a definition of the word "threaten." Under the circumstances, we believe the test is whether appellant's counsel was afforded ample opportunity on cross-examination to test the knowledge of the witness. *See Alvarado v. State,* 63 Ariz. 511, 524, 164 P.2d 460, 465 (1945). The record reveals that he was. The witness's failure to answer all ques-

tions went to her credibility, and in that regard, the trial court appropriately instructed the jury:

"A defendant has a guaranteed right to cross-examine the witnesses who testify against him. In determining the credibility of the testimony of such witnesses, you may consider the failure or refusal of such witness to respond to Cross-Examination."

Appellant also argues that the trial court abused its discretion in providing an interpreter for the complainant. We disagree. Although it is true that the record shows neither her clear inability to communicate in English nor her fluency in Apache, the complainant expressed a decided preference for testifying in Apache.

"That's just the way I like to talk in here. If I'm here, I'd rather talk Apache than English. I don't like to talk English very much in here. I'd rather talk Apache. That's the only way I could answer all your questions instead of sitting here and just waiting for you guys listen to me and just looking at me."

Appointment of an interpreter is within the sound discretion of the trial judge and ". . . the test of an abuse of discretion is whether or not such failure [to appoint] has hampered the defendant in any manner in presenting his case fairly to the jury." *Viliborghi v. State,* 45 Ariz. 275, 283, 43 P.2d 210, 214 (1935). Here the appellant claims error in appointing an interpreter rather than in failing to do so, but the same test applies. *See United States v. Frank,* 494 F.2d 145, 158 (2d Cir. 1974) cert. den. 419 U.S. 828, 95 S.Ct. 48, 42 L.Ed.2d 52. Because the witness was willing to answer questions in Apache which she would not answer in English and because the jury was able to observe her throughout her testimony in both English and Apache, appellant was not hampered in his ability to present his defense. Like the reticence of the witness, her allegedly arbitrary insistence on an interpreter was for the jury to consider in assessing her credibility.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.