851 P.2d 934

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Maxwell HOFFMAN, Defendant–Appellant.**

**Maxwell HOFFMAN, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

Nos. 18280, 18581.

Supreme Court of Idaho,
Boise, October 1992 Term.

Jan. 29, 1993.

Rehearing Denied May 26, 1993.

William H. Wellman, Nampa, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Michael J. Kane, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BAKES, Chief Justice.

Maxwell Hoffman (Hoffman) was convicted of first degree murder and sentenced to death for the killing of Denise Williams. Following his sentencing, Hoffman filed a petition for post conviction relief which the district court denied. Hoffman has appealed from his conviction and sentence, and from the denial of his petition for post conviction relief. We affirm.

The evidence at Hoffman's trial disclosed that on September 10, 1987, Denise Williams (Williams), a confidential informant working for Nampa narcotic officers, made a controlled drug buy from Richard Holmes (Holmes) which resulted in the arrest of Holmes. During the arrest it became apparent that Williams was working for the police. Holmes was subsequently released from custody on bail.

Upon Holmes' release, Sam Longstreet, Jr. (Longstreet) and James Slawson (Slawson) arranged for a meeting with Holmes. Longstreet and Slawson, who were responsible for introducing Williams to Holmes for the purpose of purchasing drugs, testified that they met with Holmes in an effort to assure him that they had nothing to do with his arrest. They further testified that when they arrived at Holmes' residence,

two other men, defendant Hoffman and Ronald Wages (Wages), were present. Both Wages and Hoffman worked for Holmes as part of his drug operation, and both men were heavy drug users themselves. During this meeting, outside the presence of Hoffman and Wages, Holmes asked Longstreet and Slawson if they would kill Williams for her involvement in his arrest and to prevent her from testifying at Holmes' preliminary hearing on the drug charges. Longstreet and Slawson stated that they were incapable of killing Williams but would help in other ways. In response, Holmes' stated that if it were up to him he would cut Williams' throat and "let her bleed like an animal."

The next day, Longstreet and Slawson returned to Holmes' house. Hoffman and Wages were again present. Holmes had Hoffman conduct a strip search of Longstreet and Slawson to ensure that they were not wired and working for the police. During this meeting, an agreement was reached between Holmes, Longstreet and Slawson wherein Longstreet and Slawson were to kidnap Williams and take her to a spot in Owyhee County known as the Boy Scout Camp. Holmes, Wages, Longstreet and Slawson then drove to the Boy Scout Camp where they planned the details of the kidnapping. It was agreed that Longstreet and Slawson would call Holmes once they had kidnapped Williams and that Wages would be waiting at the camp when they arrived. It was also agreed that Williams was to be tied up to a tree in the area until Holmes arrived.

The following evening, Holmes and Hoffman took Wages to the Boy Scout Camp where they all ingested drugs. Holmes and Hoffman then left, leaving Wages at the Camp. Longstreet and Slawson arrived at the camp sometime later with Williams. Longstreet testified that he and Slawson tricked Williams into going with them by telling her that they would take her to buy alcohol. The three drove around drinking and ingesting drugs, stopping only once to allow Longstreet to call Holmes and leave a message that he had Williams. Longstreet and Slawson then pretended to get lost and eventually made

their way to the Boy Scout Camp as was earlier planned. Upon their arrival at the camp, Wages, who was wearing a bandanna and carrying a sawed off shotgun, ordered Longstreet and Slawson to strip Williams of her clothes and to tie her up. The two men complied with Wages' order. Longstreet and Slawson then left the camp, leaving Williams with Wages.

Hoffman arrived at the camp a short time later. Hoffman and Wages loaded Williams into a car and met Holmes at the old ION highway cutoff. Holmes kicked Williams in the head and told her she was "a dead bitch." Holmes left and subsequently returned in a brown Nissan four-wheel drive and told Hoffman and Wages, "You know what to do." Holmes then left again.

Hoffman and Wages then took Williams in the Nissan. After driving around for several hours, they stopped the vehicle in Delamar, Idaho. Wages and Hoffman instructed Williams to write two letters to the press, which were intended to exonerate Holmes of the drug charges. After the letters were written, Williams was taken to a cave outside of Silver City, Idaho. Hoffman took Williams into the cave and slashed her throat with a knife. As Hoffman was returning to the vehicle, Wages spotted Williams crawling up an embankment near the cave. Wages then pursued Williams and stabbed her under the arm with Hoffman's knife. Thinking Williams was dead, both men buried her with rocks. It would later be determined that the cause of death was a crushing blow by a rock to William's head.

Upon William's disappearance, a police investigation ensued. Eventually, Longstreet and Slawson agreed to provide the police with information regarding William's disappearance in exchange for a recommendation of a year in jail for kidnapping. Based on this information, Holmes and Wages were indicted on charges of conspiracy to commit murder. In an effort to secure a plea agreement, Holmes led the police to Williams' body. The conspiracy charges against Holmes were vacated, but Holmes was subsequently charged with

aiding and abetting first degree murder on August 22, 1988.

After Williams' body was found, Wages confessed to the killing and became a cooperative witness for the state and agreed to give a full account of how it occurred. Wages and Hoffman were then charged with first degree murder in Owyhee County. Hoffman went to preliminary hearing on September 14, 1988, where Wages was the principal witness for the State. Hoffman called Holmes as a witness, but Holmes refused to testify, claiming the fifth amendment right against self incrimination.[1]

Hoffman's case proceeded to trial where a jury found him guilty of first degree murder.

Prior to the sentencing Hoffman filed a motion for jury sentencing or, in the alternative, to have an advisory jury empaneled. The trial court denied this motion. Hoffman also filed a motion requesting an examination by a psychologist or psychiatrist. The trial court granted this motion and ordered the appointment of a psychologist, Dr. Sanford, who evaluated Hoffman and supplied a report to Hoffman and his attorney. However, Hoffman did not disclose this report at sentencing or make any use of the psychological findings.

The sentencing hearing was held on June 9, 1989, and Hoffman was sentenced to death.

After sentencing, Hoffman petitioned the trial court for post-conviction relief and filed another motion for appointment of a psychiatrist, asserting that further examination was necessary in order to determine whether he was competent to understand the proceedings against him. The trial court denied Hoffman's second motion for appointment of a psychiatrist for lack of an adequate showing. The court then denied his petition for post-conviction relief.

Hoffman has appealed from his conviction, his sentence, and the denial of his petition for post-conviction relief. Additionally, we review the death sentence under I.C. § 19–2827.

Hoffman's first assignment of error concerns the trial court's admission of various out-of-court statements made by Holmes. The trial court admitted the statements under I.R.E. 801(d)(2)(E)[2] on the basis that Holmes, Wages, Longstreet, Slawson and Hoffman were co-conspirators in the killing of Williams.

At trial, the prosecution called Longstreet to testify regarding his meetings with Holmes. Hoffman objected to any testimony by Longstreet concerning statements made by Holmes during the meetings, arguing that at that point in time in the trial there was insufficient evidence to establish that a conspiracy existed or, if there was evidence of a conspiracy, the evidence did not include Hoffman. The trial court admitted the statements after finding that the evidence given up to that point at trial, as well as other evidence proffered by the prosecution, established a sufficient indicia of a conspiracy which included Hoffman.

On appeal, Hoffman again maintains that the evidence given at trial did not support a finding of a conspiracy that included Hoffman. However, a review of the record discloses sufficient evidence to support a finding that Hoffman was a member of a conspiracy to kill Williams. At the time of

---

1. Within a few days after refusing to testify at the preliminary hearing, and while incarcerated at the Idaho State Correctional Institution, Holmes was killed by another prisoner.

2. **Rule 801. Definitions.**—The following definitions apply under this Article:

 . . . .

 (d) Statements which are not hearsay. A statement is not hearsay if—

 . . . .

 (2) Admission by party-opponent. The statement is offered against a party and is ...

(E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Hoffman's objection, there was evidence that Holmes was Hoffman's leader and that Hoffman lived at Holmes' residence and worked in Holmes' drug operation. There was also testimony at that time that Hoffman was with Holmes when Wages was dropped off at the Boy Scout Camp. Later testimony established that, acting for Holmes, Hoffman conducted a strip search of Longstreet and Slawson to protect Holmes. It was also established that Hoffman drove Williams to Holmes after she had been kidnapped and that Holmes told Hoffman, "You know what to do," when it came time to take Williams away. Hoffman had Williams prepare letters exonerating Holmes. Finally, there was evidence that Hoffman told other inmates while he was in jail that he and Holmes had planned to get rid of Williams and that Holmes had offered him $10,000 and some property to kill her.

■ In order to be admissible under I.R.E. 801(d)(2)(E), it is not necessary that the statements were made in the presence of, or with the knowledge of, the other conspirators. *See State v. So,* 71 Idaho 324, 231 P.2d 734 (1951); *State v. Hernandez,* 120 Idaho 785, 820 P.2d 380 (Ct.App. 1991). Nor is it necessary that the defendant be a part of the conspiracy at the time the statements were made. *See United States v. Baines,* 812 F.2d 41 (1st Cir.1987); *United States v. Jannotti,* 729 F.2d 213 (3rd Cir.1984), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); *United States v. Tombrello,* 666 F.2d 485 (11th Cir.1982), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982). A trial court can properly admit evidence of statements made in pursuance of a conspiracy if there is some evidence of the conspiracy or a sufficient offer of proof of its existence. *State v. Caudill,* 109 Idaho 222, 706 P.2d 456 (1985); *State v. So,* 71 Idaho 324, 231 P.2d 734 (1951); *State v. Hernandez,* 120 Idaho 785, 820 P.2d 380 (Ct.App.1991). The trial court's decision to admit statements will not be disturbed so long as there is "sufficient evidence to permit the trial court reasonably to infer that there existed a conspiracy." *State v. Brooks,* 103 Idaho 892, 901, 655 P.2d 99, 108 (Ct.App.1982)

(citing *State v. Thompson,* 273 Minn. 1, 139 N.W.2d 490 (1966), *cert. den.* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966). The evidence clearly supports a finding of a conspiracy of which Hoffman was a member. The trial court did not err in admitting the out-of-court statements of Holmes under I.R.E. 801(d)(2)(E).

■ Hoffman further argues that even if there is evidence to support a conspiracy, the reliability of Holmes' statements was questionable, and therefore the admission of these hearsay statements at trial violated Hoffman's constitutional right to confrontation. Hoffman also argues that the use of these hearsay statements by the trial court, in its sentencing findings compounds the constitutional violation. However, it is well settled that testimony of out-of-court statements made by co-conspirators in the furtherance of the conspiracy do not violate a defendants right to confrontation. In *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the United States Supreme Court stated:

> We think ... that co-conspirators' statements, when made in the course and in furtherance of the conspiracy, have a long tradition of being outside the compass of the general hearsay exclusion. Accordingly, we hold that the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of Rule 801(d)(2)(E).

at 183, 107 S.Ct. at 2783. *Bourjaily* was reaffirmed in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), where the United States Supreme Court held that a statement is deemed reliable when it falls within a firmly rooted hearsay exception. Admission of the statements at trial was not error.

■ Nor was it error for the trial court to rely on the statements in sentencing. A sentencing judge is entitled to consider an even wider range of evidence in determining an appropriate sentence. *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991). The strict evidentiary rules

which govern at trial are not rigidly applied during the sentencing proceeding. *State v. Pizzuto, supra; State v. Pierce,* 100 Idaho 57, 593 P.2d 392 (1979). The statements admissible at trial are certainly appropriate to be considered by the trial court at sentencing.

■ Hoffman next claims that the trial court's reasonable doubt instruction was erroneous.[3] Hoffman contends that this instruction violated his right to due process because it required the jury to base their verdict on a "moral certainty." As authority for his argument, Hoffman cites *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), where the Supreme Court struck down a reasonable doubt instruction because it equated "reasonable doubt" with "grave uncertainty" and "actual substantial doubt" and because it also stated that what was required was a "moral certainty" that the defendant was guilty. at 40, 111 S.Ct. at 329.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *State v. Rhoades,* 121 Idaho 63, 82, 822 P.2d 960, 979 (1991) (citing *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In *Rhoades,* we stated that "the only appropriate instruction on reasonable doubt is the California jury instruction" which was approved in *State v. Cotton,* 100 Idaho 573, 602 P.2d 71 (1979). 121 Idaho at 82, 822 P.2d at 979.

After reviewing the instructions approved in *Rhoades* and *Cotton,* and the instruction given in this case, we conclude that the instructions are substantially the same. The instruction in this case therefore was not erroneous. The instruction did not use the "grave uncertainty" language which was found to be the improper language of the *Cage* instruction in *Gaskins v. McKellar,* — U.S. —, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991). Accordingly, the reasonable doubt instruction in this case did not deny Hoffman of his right to due process.

■ Prior to sentencing, Hoffman filed a motion with the trial court to have a jury empaneled for the purpose of sentencing, or in the alternative, to serve in an advisory capacity to the trial court. The trial court denied the motion, holding that the right to jury sentencing is not required by Article 1, § 7 of the Idaho Constitution. Hoffman claims the denial was error. We disagree. In Idaho, it is well settled that punishment in a capital case is to be determined by a judge rather than a jury. *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991).

---

**3.** The reasonable doubt instruction in this case read as follows:

Under our law and system of justice a defendant in a criminal action is presumed to be innocent. The effect of this presumption is to place the burden on the prosecution to prove the defendant guilty beyond a reasonable doubt in order to support a conviction.

In other words, the presumption of innocence alone requires the defendant to be acquitted unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in this case; thus, in order to acquit the defendant the jurors need not find the defendant to be innocent but only entertain a reasonable doubt as to his guilt.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. The burden of proof never shifts to a defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of proving his innocence or calling any witnesses or producing any evidence at all.

The effect of the presumption of innocence, however, is only to place upon the prosecution the burden of proving the defendant guilty beyond a reasonable doubt. It is not required that the prosecution prove guilt beyond all possible doubt. A reasonable doubt is a doubt based upon evidence or lack of evidence and upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs.

If you have a reasonable doubt as to the guilt of the defendant, you must acquit him. But if, after going over in your minds the entire case, you have an abiding conviction, to a moral certainty, of the truth of the charge, then you are convinced beyond a reasonable doubt, and you should render your verdict accordingly.

■ Hoffman also appeals from the trial court's denial of his motion for the appointment of a psychiatrist. Hoffman filed the motion after sentencing, asserting that a psychiatric examination was necessary to determine whether he was competent to understand the proceedings against him.

Under I.C. § 19–2522(1)[4] the trial court may appoint at least one psychiatrist or psychologist to examine and report on the mental condition of a defendant. Prior to sentencing the court had appointed Dr. Sanford, a licensed psychologist, to examine Hoffman in response to a motion filed by Hoffman requesting an examination under I.C. § 19–2522. Hoffman, however, chose not to disclose Dr. Sanford's report at sentencing. Before ruling on Hoffman's post-sentencing motion, the trial court reviewed Dr. Sanford's report and, based on that report and the court's observations of Hoffman at trial, concluded that there was "no indication, either by motion or otherwise, that there was any problem with Hoffman's ability to perceive and understand the proceedings." The trial court's findings are supported by the record. *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992). We find no error.

Hoffman raises two issues involving the trial court's findings in mitigation. Hoffman argues that the trial court failed to find as mitigating facts the state's offer of a plea bargain and the testimony of William Fisher.

■ First, involving the state's offer to plea bargain, prior to trial the State offered Hoffman the opportunity to plead guilty to first degree murder in return for the State's recommendation at sentencing to a fixed life sentence. Hoffman refused the offer and the State recommended the death penalty at sentencing. On appeal, Hoffman maintains that despite his refusal to accept the offer, such offer should have been considered by the trial court in its findings in mitigation. Hoffman argues that the prosecutor's willingness to plea

bargain was a mitigating factor not considered by the trial court. Based on this argument, Hoffman asks this Court to remand the case with directions to the trial court to resentence Hoffman without considering any recommendation by the prosecution for the imposition of the death penalty.

Although this Court has not specifically addressed whether an offer for a lesser recommendation is a mitigating factor, we have had the occasion to rule on a similar issue. In *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990), the State also offered not to recommend the death penalty at sentencing if the defendant, Stuart, agreed to plead guilty to first degree murder by torture. As in this case, the offer was rejected. Stuart was found guilty at trial and the prosecution recommended the death penalty at sentencing. Stuart was sentenced to death by the trial court. On appeal, Stuart argued that by exercising his right to jury trial, the death penalty was imposed arbitrarily and in violation of his constitutional rights. This Court rejected Stuart's argument on the basis that: (1) I.C.R. 11(d) expressly permits the prosecution and the defendant to engage in plea bargaining; and (2) I.C.R. 11(d)(2) and (4) make it clear that the sentencing court is not bound to accept any agreement.

Recently, in *State v. Orr*, 123 Idaho 55, 844 P.2d 684 (1992) this Court stated:

[T]his Court has held that where a plea bargain is entered into between a defendant and a prosecutor, and the plea bargain is withdrawn by the defendant or rejected by the court, there is no violation of due process for the defendant to stand trial on the original charge, or to be subjected to a more sever sentence than that contained in the plea bargain agreement which the defendant later rejected. *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990).

---

4. I.C. § 19–2522(1) states in part:
 (1) If there is reason to believe the mental condition of the defendant will be a significant factor at sentencing and for good cause shown, the court shall appoint at least one (1) psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant.

123 Idaho at 58, 844 P.2d at 687. Accordingly, we find no error in this case.[5]

Second, Hoffman maintains that the testimony of the victim's father, William Fisher, who expressed his and his family's opinion against the imposition of the death penalty in this case, should also have been considered as a mitigating fact by the trial court. At sentencing, Hoffman called Fisher to testify in mitigation. The State objected to Fisher's testimony on the basis that an opinion as to what the sentence should be was an impermissible victim impact statement. Nevertheless, the trial court admitted the testimony, and Hoffman argues that the following portion was a mitigating factor not considered by the trial court:

> As far as the death penalty I am philosophically opposed to it. I don't believe it is a deterrent to murder. We have five people that were involved in this and from where I sit it is apparent that the threat of a death penalty didn't prevent a murder, my daughter is dead. A threat of a death penalty did not deter anybody. So from these standpoints this is where I stand, this is the feeling of my family and we want to impress this on the Court.

The State maintains on appeal that Fisher's testimony should not have been admitted, much less considered as a mitigating circumstance, because it was an improper use of a victim impact statement.

In *State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991), this Court addressed the proper and improper use of a victim impact statement. In *Card*, we acknowledged that under the Supreme Court's decision in *Payne v. Tennessee*, —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), a trial court can properly consider testimony concerning the impact of the crime on the victim's family. However, a trial court is not to consider statements by the victim's family which amount to the family's opinion regarding the sentence which should be imposed on the defendant. *See also Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987); *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), *cert. denied*, 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989). In this case, Fisher's testimony was clearly an opinion to the court concerning the sentence Hoffman should receive and therefore should not have been admitted by the trial court. Nevertheless, Hoffman now asserts on appeal that, having admitted the testimony, it should have been considered in the trial court's findings in mitigation. However, our review of the record indicates that the trial court did take into account the testimony of Fisher in mitigation but still found that the mitigating circumstances did not outweigh the aggravating circumstances. In its decision denying Hoffman's petition for post-conviction relief, the trial court stated:

> It seems to be that the statutory requirements—the steps that the court must go through as to determine whether or not this is a case that might fall within the death penalty gamut, then to consider mitigating factors. *The court considered the views of the father [Mr. Fisher] as a mitigating factor;* the court was of the opinion and still is of the opinion that the fact the victim's father testified against the death penalty was not a mitigating factor that would outweigh the aggravating factors that the court found present in this case.

Hoffman's argument is without merit.

In its "Findings of the Court in Considering Death Penalty," the trial court found two statutory aggravating circumstances under I.C. § 19–2515(g). The first aggra-

---

5. There is also a question of Hoffman's failure to bring the plea negotiations to the trial court's attention at sentencing. In *Jeffers v. Ricketts*, 627 F.Supp. 1334 (D.Ariz.1986), *rev. on other grounds*, 974 F.2d 1075 (9th Cir.1992), the petitioner requested federal habeas relief on the ground that the trial court refused to consider plea negotiations as a mitigating factor. The federal district court denied relief, holding that the sentencing court was not required to conduct its own investigation and consider as mitigating factors evidence within the petitioners personal knowledge which he refused or failed to present. In this case, the sentencing court was unaware of any plea negotiations. Under I.C. § 19–2515(c), it was the responsibility of Hoffman to present the plea negotiations as a mitigating factor if he so desired.

vating circumstance was that "the murder was committed against a witness or potential witness in a criminal or civil legal proceeding because of such proceeding." I.C. § 19–2515(g)(10). The second was that the crime "was especially heinous, atrocious or cruel, manifesting exceptional depravity" under I.C. § 19–2515(g)(5).

On appeal, Hoffman raises several issues regarding the trial court's findings. However, Hoffman does not contest the trial court's finding under I.C. § 19–2515(g)(10) that the murder was committed against a witness in a legal proceeding because of such proceeding, and the record supports that finding beyond a reasonable doubt.

 Hoffman first argues that the evidence does not support the trial court's finding that the crime in this case was "especially heinous, atrocious or cruel, manifesting exceptional depravity." Hoffman points to this Court's decision in *State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981), where this court defined "heinous" as "extremely wicked or shockingly evil;" "atrocious" as "outrageously wicked and vile;" and "cruel" as "designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others." Hoffman argues that the facts of this case do not meet these definitions. However, as stated by the trial court:

Denise Williams was taken out to Owyhee County in the evening; she was stripped naked, tied up, and verbally and physically abused. There is no question that she knew she was going to be killed. While the Defendant was not present at that time, he was present later that evening on the ION Highway when the [victim] was kicked in the head by Holmes and further verbally abused and told that she was "dead meat." The defendant and Ronald Wages then drove around Owyhee County with her the rest of the night and until first light the next morning. The Defendant then took the victim

from the car, banged her head against the car door and took her with him down into a ravine where the defendant then slashed her throat. Her death was slow and agonizing. She spent the entire night knowing that she was going to die and then had to beg Wages to finish the job. There is no proof from which the Court could determine whether the victim was bleeding to death because Hoffman lost his nerve or whether he was trying to please Richard Holmes by letting her "bleed to death like an animal." During the trial witnesses had testified that Richard Holmes had made the statement that he would make Denise Williams "bleed to death like an animal." Whatever the cause of her slow death the killing was highly atrocious, cruel and proves unusual depravity on the part of the defendant, Maxwell Hoffman.

In *State v. Fain*, 116 Idaho 82, 774 P.2d 252 (1989), we stated that I.C. § 19–2515(g)(5) refers to the personal culpability of the killer exhibited by the manner in which the crime was committed. Although Hoffman disagrees with some of the factual findings made by the trial court in the above statement, we conclude that the evidence supports the trial courts finding beyond a reasonable doubt that the killing in this case was especially heinous, atrocious or cruel, manifesting exceptional depravity.

 Next Hoffman maintains that the trial court failed to find the aggravating circumstances beyond a reasonable doubt because he failed to so orally state at the sentencing hearing. However, I.C. § 19–2515(c) requires the trial court's findings to be in writing. The trial court's written findings specifically found that the aggravating circumstances existed beyond a reasonable doubt. We hold that such written findings comply with I.C. § 19–2515(c).

 Finally, Hoffman argues that I.C. § 19–2515(c)[6] is unconstitutional because it

**6.** I.C. § 19–2515(c) states:
Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds at least one (1) statutory aggravating circumstance. Where the court finds a statu-

tory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented outweigh the gravity of any aggravating circumstance found and make imposition of death unjust.

requires a defendant to provide mitigating circumstances which outweigh any statutory aggravating circumstance found. This issue was settled in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), where this Court stated:

> Only if at least one of the aggravating circumstances listed in I.C. § 19–2515(g) is found to exist beyond a reasonable doubt may a sentence of death be imposed. It is only then that a defendant has the burden of coming forward with mitigating circumstances.

116 Idaho at 154, 774 P.2d at 324. This scheme was found to be constitutional in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). In that case, the Supreme Court held:

> So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove every element of the offense charged, or in this case to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency.

497 U.S. at 650, 110 S.Ct. at 3055. Because the State was required to prove every element of the offense charged, including the statutory aggravating circumstances, the burden placed on Hoffman by operation of I.C. § 19–2515(c) did not violate his constitutional rights. *Walton v. Arizona, supra.*

Hoffman next argues that Idaho's post conviction review statute, I.C. § 19–2719 violates his rights to equal protection and due process. However, in *State v. Beam*, 115 Idaho 208, 766 P.2d 678 (1988), this Court upheld I.C. § 19–2719 under an equal protection analysis. Likewise, in *State v. Rhoades*, 120 Idaho 795, 820 P.2d 665 (1991), I.C. § 19–2719 was upheld under a due process analysis. Hoffman raises no new arguments. Accordingly, based on our decisions in *Beam* and *Rhoades*, we conclude that I.C. § 19–2719 is constitutional and Hoffman's argument to the contrary is unpersuasive.

Under I.C. § 19–2827, this Court is required to independently review the sentence of death to determine: (1) whether it was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the evidence supports the trial court's finding of a statutory aggravating circumstance enumerated in I.C. § 19–2515; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. I.C. § 19–2827(c)(1), (2), (3).

Regarding the first two inquiries, we have already held that the aggravating circumstances found by the trial court, that the murder was committed against a witness in a criminal proceeding because of such proceeding and that the murder was especially heinous, atrocious or cruel, are supported by the evidence beyond a reasonable doubt. Thus we also conclude that there is no indication that the sentence was a result of passion or prejudice or was given based upon an arbitrary factor.

Regarding the third inquiry, whether the sentence is proportional to other cases, Hoffman asserts that his sentence was not proportional to the sentences handed down to the other co-conspirators involved in the murder of Williams, especially the sentence given to Wages, nor is it a proportional penalty when considered against similar crimes and similar defendants.

When making a proportionality review under I.C. § 19–2827, this Court makes a de novo determination of whether the sentence is proportional after an independent review of the record. *See State v. Rhoades*, 120 Idaho 795, 820 P.2d 665 (1991); *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985). In comparing the sentence in this case with other capital cases, we consider: (1) the nature of, and the motive for, the crime committed; (2) the heinous nature of the crime; and (3) the nature and character of the defendant. *State v. Pizzuto*, 119 Idaho 742, 810 P.2d 680 (1991).

In comparing Hoffman's sentence to the sentences of the other co-conspirators, the only sentence which need be re-

viewed is that handed down to Wages. Slawson and Longstreet, despite the fact that they acted as accomplices, were not involved in or present at the time Williams was killed. Given the facts surrounding their involvement and their cooperation with authorities afterwards, the involvement of Slawson and Longstreet is dissimilar to Hoffman's. Holmes died prior to his conviction, and thus we need not speculate on what sentence he would have received.

Wages was the only co-conspirator to be convicted of first degree murder, and he was given a fixed life sentence. In comparing his sentence to the sentence of death given to Hoffman, we recognize that the nature of and motive for the crime are identical for each man. So, too, is the heinous nature of the crime in which both men took part. Thus, if there is any reason for Hoffman to receive the death penalty when Wages did not, it must rest with the nature and characteristics of each man.

Our review of the record disclosed that Wages did not have a prior violent criminal record, whereas Hoffman has a long history of criminal conduct. His record contains convictions for robbery, battery and kidnapping. This characteristic has been found to be important in past proportionality reviews by this court and we deem it significant here. See State v. Aragon, 107 Idaho 358, 690 P.2d 293 (1984); State v. Sivak, 105 Idaho 900, 674 P.2d 396 (1983). Also significant is the finding by the trial court that Wages was remorseful for his actions. Although the record indicates that Hoffman also expressed remorse, the trial court felt he was insincere. The trial court is in the position to best judge the sincerity and credibility of a defendant, and we defer to the trial court's evaluation of Hoffman's sincerity and credibility in this case.

Given the prior criminal record, and the antisocial personality and lack of remorse shown by Hoffman, we conclude that the sentence of death imposed on Hoffman was not disproportionate or unjust to the sentence given to Wages.

We also find that Hoffman's sentence is not disproportionate or unjust to sentences handed down in other capital cases.[7]

The record discloses that Hoffman's crime involved the following facts: Hoffman held Williams hostage against her will for several hours before killing her; the killing was done in order to protect and further criminal activity; no provocation or passion existed; the killing involved the slashing and stabbing with a knife, as well as the crushing with rocks; Hoffman attempted to hide the body and destroyed evidence to cover the crime. A review of past cases show that the crime in this case is most similar to the crimes committed in State v. Rhoades, 120 Idaho 795, 820 P.2d 665; (1991) State v. Pizzuto, 119 Idaho 742, 810 P.2d 680 (1991), cert. denied, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992); State v. Lankford, 116 Idaho 860, 781 P.2d 197 (1989), rev., —— U.S. ——, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1990); State v. Scroggins, 110 Idaho 380, 716 P.2d 1152 (1985), cert. denied, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); State v. Beam, 109 Idaho 616, 710 P.2d 526 (1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986) and 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989); State v. Paradis, 106 Idaho 117, 676 P.2d 31 (1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); State v. Gibson, 106 Idaho 54, 675 P.2d 33 (1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); State v. Major, 105 Idaho 4, 665 P.2d 703 (1983).

Regarding the characteristics of Hoffman, the record discloses that Hoffman is an antisocial personality who has had problems with violating the law since childhood. Hoffman is of low intelligence, has an extensive record of criminal violence as an adult, and has failed to take responsibility or show remorse for the killing. Hoffman was involved in the use and distribution of

---

7. Our review is composed of the cases set forth in "Appendix to Card Opinion of Johnson, J." found in State v. Card, 121 Idaho 425, 825 P.2d 1081 (1991), updated to include cases decided after Card. State v. Thomasson, 122 Idaho 172, 832 P.2d 743 (1992); State v. Brewer, 122 Idaho 213, 832 P.2d 1148 (Ct.App.1992); State v. Weinmann, 122 Idaho 631, 836 P.2d 1092 (Ct.App. 1992); State v. Orr, 123 Idaho 55, 844 P.2d 684 (1992).

controlled substances. Cases involving individuals with similar traits include *State v. Enno*, 119 Idaho 392, 807 P.2d 610 (1991); *State v. Rhoades, supra; State v. Pizzuto, supra; State v. Smith*, 117 Idaho 891, 792 P.2d 916 (1990); *State v. Gibson, supra; State v. Osborn*, 102 Idaho 405, 631 P.2d 187 (1981). Our examination of these cases indicates that Hoffman's characteristics are most similar to those in which the death penalty was imposed and affirmed by this Court. Accordingly, we hold that Hoffman's sentence is not excessive or disproportionate.

The judgments of the district court are affirmed.

McDEVITT, JOHNSON and TROUT, JJ., concur.

BISTLINE, Justice, dissenting.

There is much in the majority opinion in which I can and do concur. However, there is much of the majority opinion with which I am unable to agree. Because of the gravity of the crime and the punishment imposed, my conscience compels me to write separately.

*1. The reasonable doubt instruction.*

The giving of the reasonable doubt instruction in this case was reversible error for the same reasons I expressed in *State v. Rhoades*, 121 Idaho 63, 83–84, 822 P.2d 960, 980–81 (1991) (Bistline, J., dissenting), *cert. denied*, —— U.S. ——, 113 S.Ct. 962, 122 L.Ed.2d 119 (1993). Therefore, I dissent from the portion of the majority opinion which holds otherwise.

*2. The right to be sentenced by a jury.*

I continue to adhere to the view that I.C. § 19–2515(f), the statute requiring the district court to impose the sentence in a capital case, violates the defendant's state constitutional right to a trial by jury. *See, e.g., State v. Pizzuto*, 119 Idaho 742, 784, 810 P.2d 680, 722 (1991) (Bistline, J., dissenting), *cert. denied*, —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992); *State v. Charboneau*, 116 Idaho 129, 169, 774 P.2d 299, 339 (1989) (Bistline, J., dissenting),

*cert. denied*, 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989) and 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989); *State v. Creech*, 105 Idaho 362, 375–404, 670 P.2d 463, 476–505 (1983) (Huntley and Bistline, JJ., dissenting), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *State v. Sivak*, 105 Idaho 900, 908–09, 674 P.2d 396, 404–05 (1983) (Bistline, J., dissenting), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984). "It is high time to comply with our Idaho Constitution and put the awesome decision of life or death back in the hands of twelve tried and true jurors." *State v. Rhoades*, 120 Idaho 795, 814, 820 P.2d 665, 684 (1991) (Bistline, J., dissenting), *cert. denied*, —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992).

*3. The right to have mitigating evidence considered at sentencing.*

In this section, the majority holds that: 1) the district court did not err in failing to consider as mitigating evidence the fact that the prosecuting attorney offered to recommend a fixed life sentence if Hoffman pleaded guilty and 2) evidence that the victim's family members do not favor the imposition of the death penalty is not admissible. Therefore, no reversible error was committed. I agree with the result but not the *ratio decidendi*.

As to the first holding, I believe that it is unnecessary to the Court's decision. The appellant failed to ask the district court to consider the plea offer as mitigating evidence and, therefore, did not preserve the issue for appeal.

The Court's second holding is also unnecessary to its decision because the district court *in fact* considered the family's view as mitigating evidence. As the state has not cross-appealed in this case, the issue of whether such testimony may be considered in mitigation is not presented.

*4. The I.C. § 19–2515(g)(5) aggravating circumstance is unconstitutionally vague.*

As I have previously stated, the I.C. § 19–2515(g)(5) aggravating factor (that

the crime be "especially heinous, atrocious or cruel, manifesting exceptional depravity") is unconstitutionally vague. *See State v. Leavitt,* 121 Idaho 4, 11–14, 822 P.2d 523, 530–33 (1991) (Bistline, J., dissenting), *cert. denied,* — U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). In my view, this aggravating factor is "nothing more than [a] kitchen sink aggravating circumstance[ ] which enables the state to make *every* first degree murderer not just a candidate for, but an actual recipient of, the harshest and most final of all criminal penalties." *State v. Charboneau,* 116 Idaho at 172, 774 P.2d at 342 (1989) (Bistline, J., dissenting).

However, the Court also found the I.C. § 19–2515(g)(10) aggravating factor to be present, that "the murder was committed against a witness or potential witness in a criminal or civil legal proceeding because of that proceeding." As the district court found that the I.C. § 19–2515(g)(10) aggravating factor outweighed all the mitigating factors, the use of the unconstitutional I.C. § 19–2515(g)(5) aggravating factor in this case was harmless error.

### 5. *I.C. § 19–2719 violates the Equal Protection Clause of the state constitution.*

I believe the forty-two day filing period for petitions for post-conviction relief in capital cases is unconstitutional in that it "does not afford defendants anywhere near adequate time" to identify and frame their arguments. *State v. Paz,* 118 Idaho 542, 562–63, 798 P.2d 1, 20–21 (1990) (Bistline, J., dissenting), *cert. denied,* — U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991); *see also State v. Beam,* 115 Idaho 208, 222–23, 766 P.2d 678, 692 (1988) (Bistline, J., dissenting), *cert. denied* 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1988).

I recognize, as is obvious by the citations above, that many of the issues raised by the appellant have been previously resolved against him by the prior opinions of this Court, albeit over my vociferous objection. Those who would say stare decisis requires that those cases must be followed ignore the fact that "[s]tare decisis is not a confin-

ing phenomenon but rather a principle of law. And when the application of that principle will not result in justice, it is evident that the doctrine is not properly applicable." *Smith v. State,* 93 Idaho 795, 801, 473 P.2d 937, 943 (1970); *see also State v. Card,* 121 Idaho 425, 460, 825 P.2d 1081, 1116 (1992) (Bistline, J., dissenting), *cert. denied* — U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992). I fail to perceive how the execution of this man, who was not given a constitutional trial, arises to the level of even-handed administering of justice in Idaho.