102 P.3d 1099

George Junior PORTER, Petitioner–
Respondent,

v.

STATE of Idaho, Respondent–Appellant.

No. 29559.

Supreme Court of Idaho,
Lewiston, October 2004 Term.

Oct. 28, 2004.

Rehearing Denied Dec. 20, 2004.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant. L. LaMont Anderson argued.

Federal Defenders of Eastern Washington and Idaho, Moscow, and Andrew Parnes, Ketchum, for respondent. Bruce D. Livingston argued.

EISMANN, Justice.

This is an appeal from an order granting the petitioner-respondent post-conviction relief based upon the retroactive application of *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Because that decision of the United States Supreme Court is not to be applied retroactively, we reverse the order of the district court and remand this case for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In December 1988, the petitioner-respondent George Porter (Porter) beat his girlfriend to death. On January 26, 1990, a jury found him guilty of murder of the first degree. After a sentencing hearing, the district court sentenced Porter to death on September 7, 1990. Porter timely appealed, and this Court upheld his conviction and sentence. *State v. Porter,* 130 Idaho 772, 948 P.2d 127 (1997). He also prosecuted an application for post-conviction relief, which was denied by the district judge. That denial was also upheld on appeal. *Id.* Porter thereafter filed a second and a third application for post-conviction relief, both of which were summarily dismissed by the district court as being successive petitions for post-conviction relief that were barred by Idaho Code § 19–2719. Porter appealed both dismissals, and we dismissed those appeals. *Porter v. State,* 136 Idaho 257, 32 P.3d 151 (2001); *Porter v. State,* 139 Idaho 420, 80 P.3d 1021 (2003).

On August 2, 2002, Porter filed a fourth application for post-conviction relief based upon the decision of the United States Supreme Court in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002). In *Ring,* the Supreme Court held that the Sixth Amendment's jury trial guarantee requires that a jury, not a judge, find an aggravating circumstance necessary for the imposition of the death penalty. Porter alleged that under *Ring,* his death sentence was unconstitutional.

On August 30, 2002, the State moved for summary dismissal of Porter's post-conviction petition pursuant to Idaho Code § 19–2719(5). That statute provides that a petitioner bringing a successive application for post-conviction relief must show that he or she did not know, and reasonably should not have known, of the claim alleged in the successive application. In addition, Idaho Code § 19–2719(5)(c) provides, "A successive post-

conviction pleading asserting the exception shall be deemed facially insufficient to the extent it seeks retroactive application of new rules of law."

On April 2, 2003, the district court issued its memorandum decision. It held that Porter's application was not barred by Idaho Code § 19–2719(5) because prior to *Ring,* he did not know, and reasonably should not have known, of the claim that the Sixth Amendment requires that a jury, not a judge, find an aggravating circumstance necessary for the imposition of the death penalty. Although Porter asserted in his first appeal that the Sixth Amendment required jury determination of aggravating circumstances, *State v. Porter,* 130 Idaho 772, 795, 948 P.2d 127, 151 (1997), the district court ruled that Porter could not have known of such claim prior to *Ring* because at that time there were no decisions of this Court or the United States Supreme Court supporting it. The district court also ruled that subsection (5)(c) of Idaho Code § 19–2719 did not bar Porter's application. Although that provision was added to the statute seven years before the *Ring* decision and the filing of this action, the district court held it would be an impermissible retroactive application of the statute to apply it in this case, apparently upon the assumption that Porter was entitled to have the post-conviction-relief law remain static as of the day of his sentencing. Finally, the district court held that *Ring* was substantive, not procedural, and should therefore be applied retroactively to Porter. The district court granted Porter's application for post-conviction relief and vacated his death sentence. The court also ruled that Porter could not be resentenced to death. The district court reasoned that first-degree murder was a lesser-included offense of capital first-degree murder and that because Porter had been tried and found guilty by a jury of first-degree murder, he could only be resentenced for that offense.

## II. ANALYSIS

In *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002), the United States Supreme Court held that the Sixth Amendment's jury trial guarantee requires that a jury, not a judge, find an aggravating circumstance necessary for the imposition of the death penalty. The issue in this case is whether *Ring* is to be applied retroactively to cases that have already become final on direct review. The United States Supreme Court resolved that issue in *Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). It held, "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review." —— U.S. at ——, 124 S.Ct. at 2526.

Porter asserts that *Summerlin* should not be held to have determined the retroactivity of *Ring* to Idaho death penalty cases. Summerlin had been sentenced to death by an Arizona judge who, after a hearing, determined that two aggravating factors had been proven. According to Porter, Arizona law prevented the judge from considering hearsay evidence when making that determination. The Idaho statutes in existence when Porter was sentenced did not exclude hearsay evidence from the sentencing determination. Porter argues that *Summerlin* was based upon the Supreme Court's conclusion that Arizona's law excluding hearsay evidence made a judge's finding of an aggravating factor as accurate as a jury's finding on that issue. Because when Porter was sentenced Idaho law did not prevent a judge from considering hearsay evidence when finding an aggravating factor, he contends that *Summerlin* does not apply to his case. Porter's argument fails for two reasons.

First, *Summerlin* was not based upon any finding that the Arizona judge's determination of an aggravating factor was as reliable as a jury's determination of that issue, nor was it based upon the existence of statutory or case law excluding hearsay evidence from that consideration. *Summerlin* was based solely upon the Supreme Court's determination that *Ring* announced a new rule of procedure that would not be applied retroactively unless it was a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. Although Summerlin argued that *Ring* was such a procedural rule because juries were more accurate fact-finders than judges, the Supreme Court did not resolve that issue

even with respect to the sentencing in *Summerlin's* case. The Court addressed the issue in the abstract and concluded that it could not say that juries were more accurate fact-finders than judges.

The question here is not, however, whether the Framers believed that juries were more accurate factfinders than judges.... Nor is the question whether juries actually *are* more accurate factfinders than judges.... Rather, the question is whether judicial factfinding so "*seriously* diminishe[s]" accuracy that there is an " 'impermissibly large risk' " of punishing conduct the law does not reach. The evidence is simply too equivocal to support that conclusion.

.... When so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all,* we cannot confidently say that judicial factfinding *seriously* diminishes accuracy.

—— U.S. at ——, 124 S.Ct. at 2525 (citations omitted; emphasis in original).

Second, whether or not hearsay evidence can be considered when determining the existence of an aggravating factor is an issue that is separate and distinct from the issue of whether it is a judge or a jury who makes that determination. The identity of the factfinder (whether a judge or a jury) did not in any way limit the objections that Porter could have made to the evidence considered when determining whether an aggravating factor had been proven in his case.

■■■ Porter asks that we apply a more lenient standard of retroactivity than that applied by the United States Supreme Court. In a capital case, jury participation in the sentencing process is not required under the Idaho Constitution. *State v. Hoffman,* 123 Idaho 638, 643, 851 P.2d 934, 939 (1993); *State v. Pizzuto,* 119 Idaho 742, 770, 810 P.2d 680, 708 (1991). The issue raised by Porter in this application for post-conviction relief is based solely upon the Federal Constitution. Therefore, the retroactivity of that decision is a matter of federal law, not state law. The United States Supreme Court has resolved that issue in *Summerlin.*

■■■ Porter asserts that the privilege of habeas corpus, guaranteed in Art. I, § 5, of the Idaho Constitution, could be a vehicle for making the *Ring* decision retroactive. Habeas corpus is a remedy available to cure fundamental errors occurring at the trial that effect either the jurisdiction of the court or the validity of the judgment. *Smith v. State,* 94 Idaho 469, 491 P.2d 733 (1971). In 1967, the legislature enacted the Uniform Post Conviction Procedure Act, which was an expansion of the writ of habeas corpus. *Dionne v. State,* 93 Idaho 235, 459 P.2d 1017 (1969). Since then, a petition for habeas corpus challenging a criminal conviction or sentence is treated as an application for post-conviction relief. *Palmer v. Dermitt,* 102 Idaho 591, 635 P.2d 955 (1981). Regardless of whether it is called a petition for habeas corpus or an application for post-conviction relief, however, it is merely a remedy available to cure certain errors. *Smith v. State,* 94 Idaho 469, 491 P.2d 733 (1971). Habeas corpus is not a source of substantive law. At the time Porter was sentenced in this case, he had no right under either our State or Federal Constitutions to have the jury find the existence of an aggravating circumstance. *State v. Hoffman,* 123 Idaho 638, 643, 851 P.2d 934, 939 (1993); *Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Because there was no error, habeas corpus does not provide a remedy.

Porter argues that "trial by jury in criminal cases is fundamental to the American scheme of justice" and that its most important element is "the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' " Porter received a jury trial, and it was the jury, not the judge, who rendered the verdict of "guilty" to first-degree murder. Porter's argument is based upon the misapprehension that *Ring* made the statutory aggravating circumstances elements of a new crime that the district court below named "capital first-degree murder."

At the time Porter killed his girlfriend, Idaho Code § 18–4001 defined the crime of murder as follows:

MURDER DEFINED. Murder is the unlawful killing of a human being with malice aforethought or the intentional ap-

plication of torture to a human being, which results in the death of a human being. Torture is the intentional infliction of extreme and prolonged pain with the intent to cause suffering. It shall also be torture to inflict on a human being extreme and prolonged acts of brutality irrespective of proof of intent to cause suffering. The death of a human being caused by such torture is murder irrespective of proof of specific intent to kill; torture causing death shall be deemed the equivalent of intent to kill.

Ch. 154, § 1, 1977 Idaho Sess. Laws, 390. Idaho Code § 18–4003 defined the degrees of murder as follows:

DEGREES OF MURDER. (a) All murder which is perpetrated by means of poison, or lying in wait, or torture, when torture is inflicted with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy some sadistic inclination, or which is perpetrated by any kind of willful, deliberate and premeditated killing is murder of the first degree.

(b) Any murder of a peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting, shall be murder in the first degree.

(c) Any murder committed by a person under a sentence for murder of the first or second degree, including such persons on parole or probation from such sentence, shall be murder of the first degree.

(d) Any murder committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, kidnapping or mayhem is murder of the first degree.

(e) Any murder committed by a person incarcerated in a penal institution upon a person employed by the penal institution, another inmate of the penal institution or a visitor to the penal institution shall be murder of the first degree.

(f) Any murder committed by a person while escaping or attempting to escape from a penal institution is murder of the first degree.

(g) All other kinds of murder are of the second degree.

Ch. 154, § 2, 1977 Idaho Sess. Laws, 390, 390–91. Idaho Code § 18–4004 sets forth the punishment for murder, which, for someone convicted of first-degree murder, was either death or life imprisonment.

▮ When Porter was sentenced, Idaho Code § 19–2515 set forth the procedure that must be followed when the State was seeking the death penalty. That statute had been amended in 1977 by the Idaho legislature to comply with decisions of the United States Supreme Court. *State v. Creech*, 105 Idaho 362, 670 P.2d 463 (1983). Section 19–2515 did not define a separate crime of capital first-degree murder. It merely set forth the procedures that must be followed in order to impose a death sentence, defined the statutory aggravating circumstances, and required that at least one aggravating circumstance be found beyond a reasonable doubt before a defendant could be sentenced to death. *Ring* did not elevate those statutory aggravating circumstances into elements of a crime, nor did it create a new crime. *Schriro v. Summerlin*, — U.S. —, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Indeed, the United States Supreme Court lacks the authority to enact or amend state legislation. Only our state legislature has that authority, and it did not make the aggravating circumstances elements of the crime. *Ring* merely held that a state cannot impose the death penalty unless its sentencing procedures have the jury, not the judge, determine the existence of a statutory aggravator.

▮ Under Idaho law, there is no such crime as "capital first-degree murder." Murder is either murder of the first degree or murder of the second degree. If a defendant is convicted of first-degree murder, then the State can seek the death penalty if it follows the proper procedures. Porter was properly sentenced to death under the procedures in existence at the time of his sentencing, which had a judge, not the jury, determine whether an aggravating circumstance had been proven beyond a reasonable doubt. There is no basis for concluding that judicial

fact-finding regarding the statutory aggravating circumstances is less accurate than jury fact-finding. *Schriro v. Summerlin*, — U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

Finally, Porter claims that it is unfair for *Ring* not to be applied retroactively to him merely because his death sentence had already become final on direct appeal. Whether or not this asserted unfairness would be a reason for applying *Ring* retroactively was an issue for the United States Supreme Court to consider when announcing its decision in *Summerlin*.

The district court sentenced Porter to death on September 7, 1990. Porter timely appealed, and this Court affirmed his conviction and sentence on August 27, 1997. *State v. Porter*, 130 Idaho 772, 948 P.2d 127 (1997). He filed a petition for rehearing, which this Court denied on December 12, 1997. *Id.* Porter then sought a petition for a writ of certiorari to the United States Supreme Court, which the Court denied on May 18, 1998. *Porter v. Idaho*, 523 U.S. 1126, 118 S.Ct. 1813, 140 L.Ed.2d 951 (1998). At that point, his sentence became final on direct appeal. Because *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002), simply established a new procedural rule for the imposition of the death penalty that is not retroactive, *Schriro v. Summerlin*, — U.S. ——, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004), *Ring* has no application to Porter. Therefore, the order of the district court entered on April 2, 2003, is reversed.

## III.   CONCLUSION

The order of the district court is reversed, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal to the State.

Chief Justice SCHROEDER, and Justices TROUT, KIDWELL and BURDICK concur.