864 P.2d 1123

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Keith Eugene WELLS, Defendant– Appellant.**

No. 19896.

Supreme Court of Idaho,
Boise November, 1993 Term.

Dec. 3, 1993.

Ada County Public Defender's Office, Boise, for appellant. Amil Myshin argued.

Larry EchoHawk, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent. Lynn E. Thomas argued.

TROUT, Justice.

In this case, pursuant to the automatic review requirements of I.C. § 19–2827, we have independently reviewed a sentence of death imposed for two convictions for murder. We *affirm*.[1]

Keith Eugene Wells ("Wells") was sentenced to death after being found guilty by a jury of the December, 1990 felony murders of two people at the Rose Pub Bar in Boise, Idaho. The victims were John B. Justad, a bar patron, and Brandi Kay Rains, the bartender. Approximately $400.00 was taken from the cash register and Justad's wallet was taken.

In January of 1992, an evidentiary hearing was held for sentencing purposes, at which hearing evidence was taken and arguments heard. I.C. § 19–2515(d). The court made the following findings: Both

---

**1.** After initially seeking post-conviction relief and filing an appeal, Wells moved to dismiss his petition for post-conviction relief and his appeal. This Court reviewed the district court's determination that Wells was competent to make these decisions and then granted Wells' motions. Thus, our review is solely under I.C. § 19–2827.

victims were killed by severe blows to the head with a heavy object; Justad was struck repeatedly with blows severe enough to shatter his skull in an attack the ferocity of which indicated a desire to torture; and Rains, who posed no physical threat to Wells, was struck from behind with sufficient force to put a two-inch hole in her skull.

The court also found that Wells had been incarcerated for a significant portion of his adult life. He had an extensive criminal background, a history of abuse of illegal drugs and a record of armed robbery. Wells conceded that his family was afraid of him because of his violent temper. On one occasion, Wells threatened a police officer. On another occasion, he threatened a co-worker, stating "I am a very dangerous person and I could hurt you." At one point, while on parole, Wells held his pregnant wife and stepson hostage with an explosive. In prison, he was observed with his hands about his wife's throat while she was visiting. He threatened his parole officer with a screwdriver so as to put the man in fear for his safety. The murders were committed less than a year after Wells was released from prison and during the time he was still being supervised.

After the aggravation/mitigation hearing was held, the trial court issued written findings of mitigating and aggravating factors. The court found as mitigating factors the fact that Wells had a troubled upbringing, including being subjected to physical abuse; that his conduct was influenced by alcohol and drug abuse from an early age; that the coping mechanisms developed during his lengthy incarceration did not translate into coping skills for life in free society; and that he has strong religious beliefs and the capability of strong feelings of love for family members. The court found the following statutory aggravating factors proven beyond a reasonable doubt under I.C. § 19–2515(g): at the time the murder was committed the defendant also committed another murder, I.C. § 19–2515(g)(2); the murder was espe-

cially heinous, atrocious and cruel, manifesting exceptional depravity, I.C. § 19–2515(g)(5); and the defendant, by prior conduct or conduct in the commission of the murder at hand, exhibited a propensity to commit murder which will probably constitute a continuing threat to society, I.C. § 19–2515(g)(8).[2] The court weighed the mitigating factors against each of the aggravating factors and found that the mitigating factors did not outweigh any of the aggravating factors and did not make imposition of the death penalty unjust.

We are statutorily obligated to review the imposition by the court of Wells' death sentence. Idaho Code § 19–2827(c) requires that all death sentences be reviewed by the Supreme Court and that the Court shall specifically determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2) Whether the evidence supports the judge's finding of a statutory aggravating circumstance from among those enumerated in section 19–2515, Idaho Code, and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

I.C. § 19–2827(c).

■ We have reviewed the record of the trial and the sentencing hearing in light of the requirements of I.C. § 19–2827(c). As to the first element of our inquiry, we believe the findings of the trial court, in considering the death penalty under I.C. § 19–2515, reflect a rational and dispassionate evaluation of the factual circumstances of the case and demonstrate a thorough consideration of all the relevant evidence produced at the sentencing hearing. There is nothing in the record to indicate the death penalty was imposed as a result of passion, prejudice or arbitrariness.

■ As to the second element under I.C. § 19–2827(c), we conclude that the aggra-

---

2. I.C. § 19–2515(g) requires that at least one statutory aggravating factor be found to exist beyond a reasonable doubt before a sentence of death can be imposed.

vating circumstances found by the trial court are amply supported by the record. It is without question that Wells committed more than one murder. The other two aggravating factors found by the court are also amply supported by the record. Justad was hit at least five times with blows severe enough to shatter his skull. There were indications on his arms that he had attempted to defend himself, but there is no question that Justad was struck repeatedly at a time when he could no longer defend himself. Rains was struck from behind with sufficient force to put a two-inch hole in her skull. Both Justad and Rains were still barely alive at the time the police were called to the scene, but had been left lying in pools of blood while the money was removed and Wells left the scene.

In *State v. Osborne*, 102 Idaho 405, 418, 631 P.2d 187, 200 (1981), this Court provided additional definition to the terms used in (g)(5) as follows:

> It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. *What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim.* (Emphasis added.)

*quoting from State v. Dixon*, 283 So.2d 1 (Fla.1973), *cert. den.*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). The Court held that with the additional construction placed on it "i.e., that the murder must be accompanied by acts setting it apart from the norm of murders and that its commission manifests such depravity as to offend all standards of morality and intelligence," (g)(5) was sufficiently definite to guide the sentencing court's discretion in imposing the death penalty. *Id.*, 102 Idaho at 418, 631 P.2d at 200. The evidence cited above supports the trial court's conclusion that the murders committed by Wells were especially heinous, atrocious and cruel, manifesting exceptional depravity, as those terms have been more specifically defined by this Court.

The evidence also revealed Wells to be a violent man, with a propensity toward rage and intimidation. The district court's findings set forth in detail Wells' prior criminal record and record of intimidation, threats and disciplinary problems. These findings are amply supported by the evidence introduced at trial and at the sentencing hearing. This evidence supports the trial court's conclusion that the defendant, by prior conduct and conduct in the commission of the murders at hand, exhibited a propensity to commit murder which will probably constitute a continuing threat to society.

Finally, as to the third element of our inquiry, we have reviewed the sentence imposed and compared it with the sentence imposed in other capital cases where the death penalty was imposed[3] as well as cases in which the death penalty was not imposed.[4] In making the comparison, we

---

**3.** Those cases we have considered include: *State v. Hoffman*, 123 Idaho 638, 851 P.2d 934 (1993); *State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991), *cert. denied,* — U.S. —, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *State v. Rhoades,* 120 Idaho 795, 820 P.2d 665 (1991); *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992); *State v. Paz,* 118 Idaho 542, 798 P.2d 1 (1990); *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *McKinney v. State,* 115 Idaho 1125, 772 P.2d 1219 (1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3292, 111

L.Ed.2d 800 (1990); 107 Idaho 180, 687 P.2d 570 (1984); *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Gibson,* 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984).

**4.** Those cases we have considered include: *State v. Weinmann,* 122 Idaho 631, 836 P.2d 1092 (Ct.App.1992); *State v. Brewer,* 122 Idaho 213, 832 P.2d 1148 (Ct.App.1992); *State v. Bainbridge,* 117 Idaho 245, 787 P.2d 231 (1990); 108 Idaho 273, 698 P.2d 335 (1985).

have considered both the crime and the defendant to determine whether the sentence was proportionate and just in this instance. After thoroughly examining the record, the trial court's findings in support of the death penalty, and the pre-sentence report in this case, we conclude that the sentence imposed in this case is not disproportionate to other cases in which the imposition of the death penalty has been affirmed.

Accordingly, the sentence of death imposed in this case against Keith Eugene Wells is affirmed. Upon issuance of the remittitur the district court shall set a new execution date. I.C. § 19–2719(11).

McDEVITT, C.J., and BISTLINE, JOHNSON, and SILAK, JJ. concur.