955 P.2d 1082

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robin Lee ROW, Defendant–Appellant.**

**Robin Lee ROW, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

Nos. 21018, 22918.

Supreme Court of Idaho,
Boise, January 1998 Term.

Decided March 18, 1998.

Rehearing Denied May 20, 1998.

Kehne Law Office, Boise, for appellant. Rolf M. Kehne argued.

Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

## NATURE OF THE CASE

WALTERS, Justice.

Robin Lee Row appeals from the judgment of conviction and death sentence imposed by the district court after a jury found her guilty of three counts of first-degree murder and one count of aggravated arson. Row also appeals from the district court's order

denying her petition for post-conviction relief. In addition, this case is subject to mandatory review as required by Idaho Code § 19–2827(c). We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

During the early morning hours of February 10, 1992, a fire broke out at Robin Row's two-story apartment in a duplex at 10489 Seneca, in Boise, Idaho, and local fire trucks were dispatched to the scene. Due to recent problems in her relationship with her husband, Row was not living at the residence at that time. Instead, she was staying with a friend, Joan McHugh. After the fire was sufficiently under control, fire crews entered the apartment and found the bodies of Row's husband, Randy Row, and her two children, Joshua (age 10) and Tabitha (age 8). All three had died from carbon monoxide poisoning as a result of the fire.

Fire investigators found that the fire primarily started where the apartment joined the garage and that a second fire was started in some clothes piled in the living room. The investigators determined that a flammable, liquid accelerant was used to ignite the fire, and found that the smoke detector in the residence had been disabled before the fire when the power to the upstairs was cut off at the circuit breaker. As a result of the disconnected smoke alarm, the victims were not alerted to the fire which caused their deaths.

An investigation by the police ensued. The police discovered Row had lost a daughter to Sudden Infant Death Syndrome in 1977, and that her son, Keith, had died in a house fire in California in 1980. A warrant was obtained to search Row's burned apartment, Joan McHugh's residence where Row was staying on the night of the fire, Row's automobile, and Row's storage unit located in Meridian, Idaho.

During the search, the police discovered six insurance policies carried by Row on the lives of the deceased members of the Row family. These policies named Robin Row as the beneficiary and provided a total of $276,500 in death benefits. The most recent policy had been obtained by Row on January 24, 1992, just seventeen days before the fatal fire. In addition, at the storage unit in Meridian, police discovered evidence tending to prove that Row had been stealing from the bingo operation run by the YWCA where Row worked. This discovery resulted in Row's arrest on February 13, 1992, for grand theft by unauthorized control of funds belonging to the YWCA. She was placed in the Ada County Jail, and bail was set at $100,000.

While the arson and multiple-death investigation continued, Detective Raney prevailed upon Joan McHugh to put a tape recorder on her telephone to record conversations between herself and Row, if Row happened to call. Around 1:00 on the afternoon of March 20, 1992, Row telephoned McHugh from the jail. As suggested by Detective Raney, McHugh told Row that she had awakened during the night of the fire and had gone downstairs, but could not find Row in the residence. In response, Row told McHugh that she had left the residence that night, but stated that she was outside the house talking to her psychiatrist.

At about the same time on March 20, police and the prosecutor were holding a press conference to announce that a criminal complaint for three counts of murder had been filed against Row. The following Monday, March 23, Row was arrested while still in the Ada County Jail. She made her initial appearance before the magistrate that same day. The complaint was subsequently amended to include the charge of aggravated arson. Row's counsel filed a series of pretrial motions seeking to suppress statements Row had made to McHugh while she was incarcerated on the theft charge. The district court denied these motions. On March 5, 1993, following a jury trial, the jury returned verdicts of guilty on the murder and arson charges. A sentencing hearing was held, and on December 16, 1993, the district court imposed the death sentence. Row filed a notice of appeal on January 26, 1994.

On March 17, 1994, Row filed an application for post-conviction relief. Row challenged her trial counsel's handling of pretrial

motions and presentation of mitigation evidence in the capital sentencing proceedings. In addition, Row asked for the appointment of a "money judge" to rule on Row's requests for expert assistance. Row also moved for a continuance to develop additional evidence in support of the petition for post-conviction relief. The district court denied Row's motion for a continuance and went forward with the post-conviction proceedings. Thereafter, on March 11, 1996, the district court entered a decision and order dismissing the post-conviction application. Row appealed from that order, and the two appeals were consolidated for review.

## II.

## ISSUES ON APPEAL

Row presents the following issues:

1. Whether the district court erred in finding the statutory aggravating circumstance in its decision to impose the death penalty.

2. Whether the district court correctly weighed all mitigating circumstances against the statutory aggravator found to support the imposition of the death penalty.

3. Whether the court's instruction given to the jury at trial correctly defined the concept of reasonable doubt.

4. Whether the district court erred in denying Row's request for an *ex parte* procedure for the approval of expert assistance in the post-conviction action.

5. Whether the district court erred in denying Row's request for a continuance of her postconviction hearing.

6. Whether Row's trial counsel was deficient in the presentation and argument of a motion to suppress statements made by Row to Joan McHugh.

7. Whether Row's trial counsel was deficient in the preparation and presentation of mitigation evidence in the capital sentencing proceedings.

1. Subsequent to the trial in this case, the legislature amended I.C. § 19–2515, redesignating former subpart (g) as subpart (h). *See* 1995 Idaho Sess. Laws, ch. 140, p. 594. Our reference to

## III.

## DIRECT APPEAL ISSUES

**A. The District Court Did Not Err in Finding the Statutory Aggravating Circumstance.**

██ Row contends that the district court erred in finding the statutory aggravating circumstance in its decision to impose the death penalty. We conclude that the district court did not err by sentencing Row to death because the court found the "multiple murders" statutory aggravator pursuant to Idaho Code § 19–2515(g)(2) [1], and did not need to find any other statutory aggravating circumstances.

In its decision to impose the death sentence the district court opined that the separate verdicts finding Row guilty of each of the three counts of first-degree murder established, as a matter of law, the statutory aggravating circumstances under I.C. § 19–2515(g). Idaho Code § 19–2515(g)(2) provided for a statutory aggravating circumstance when "[a]t the time the murder was committed the defendant also committed another murder." Applying this statute, the district court held that because Row had "obviously committed three first degree murders which the jury found to be wilful, deliberate and premeditated," the statutory aggravator existed. We agree with the district court that the facts and supporting jury verdicts objectively establish, as a matter of law, the "multiple murders" statutory aggravator. The district court's finding of the statutory aggravating circumstance is amply supported by the record.

The district court also considered the fact that Row was found guilty of arson, which established the statutory aggravating circumstance found in Idaho Code § 19–2515(g)(7)—a murder committed in the perpetration of arson. Furthermore, the district court concluded that "two additional statutory aggravating circumstances have been proved beyond a reasonable doubt." In

this subpart of the statute will be as it existed at the time of Row's trial, (g), not as later amended to (h).

this regard, the district court found that Row's anticipation of insurance proceeds established that the murders were committed for remuneration or the promise of remuneration pursuant to I.C. § 19–2515(g)(4), and that the nature of the murders established that Row exhibited utter disregard for human life, establishing the aggravating circumstance found in I.C. § 19–2515(g)(6).

Row takes issue with the district court's finding about the "remuneration" and "utter disregard" statutory aggravating circumstances. She also claims the district court erred by not weighing the mitigating circumstances against each of the aggravators so found by the court.

Idaho Code § 19–2515(c) provides:

(c) Where a person is convicted of an offense which may be punishable by death, a sentence of death shall not be imposed unless the court finds *at least one (1) statutory aggravating circumstance.* Where the court finds a statutory aggravating circumstance the court shall sentence the defendant to death unless the court finds that mitigating circumstances which may be presented are sufficiently compelling that the death penalty would be unjust. (Emphasis added.)

■ Thus, while the district court considered other factors that could have served as statutory aggravators, the district court was not required, and did not undertake, to engage in a weighing process with regard to any aggravators other than the one specifically relied upon for imposition of the death penalty. We reject Row's claim that the district court committed any error by failing to measure the mitigating circumstances against the "remuneration" and "utter disregard" circumstances.

## B. The District Court Correctly Weighed All Mitigating Circumstances Against the Statutory Aggravator to Support the Imposition of the Death Penalty.

■ Row contends that the district court failed to follow the requirements of I.C. § 19–2515 and *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299, *cert. denied,* 493 U.S. 922, 110 S.Ct. 287, 107 L.Ed.2d 267 (1989),

*overruled on other grounds, State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991), by declining to weigh each of the remaining three aggravating circumstances against all mitigating factors. Row also submits that the district court incorrectly weighed the death of more than one victim aggravator and the utter disregard aggravator together against all mitigation circumstances instead of weighing each aggravator separately against the mitigation circumstances.

In *State v. Charboneau,* this Court held that the district court must weigh all mitigating circumstances against each of the aggravating circumstances, separately, rather than merely weighing all of the mitigating circumstances against all of the aggravators, collectively. *See State v. Leavitt,* 116 Idaho 285, 295, 775 P.2d 599, 609 (1989) (Johnson, J., concurring). Here, the district court demonstrated that it understood this process and weighed all mitigating circumstances separately against the "multiple murders" aggravator. During the weighing process, the district court focused on the aggravating circumstance which it considered the most telling, "specifically I.C. § 19–2515(g)(2)— that the defendant committed three (3) wilful, deliberate and premeditated first degree murders." After considering the mitigating circumstances raised by Row, the district court concluded that the mitigating factors did not outweigh the "multiple murders" aggravator found in I.C. § 19–2515(g)(2), and did not make the imposition of the death penalty unjust. Therefore, the district court applied the *Charboneau* analysis and weighed all of the mitigating circumstances against only the "multiple murders" aggravator.

After applying the *Charboneau* analysis to the "multiple murders" aggravator the district court specifically "declined to formally weigh each of the remaining three (3) aggravating circumstances against all mitigating factors." We find no error in this regard. As previously stated, the district court was not required to discuss each of the remaining aggravating circumstances that may have existed, once the district court found that the "multiple murders" statutory aggravating circumstance outweighed the mitigation cir-

cumstances and was sufficient to justify imposition of the death penalty.

■ Row also contends that the district court did not consider all of the mitigating circumstances because it did not formally discuss each one. In *State v. Creech*, 105 Idaho 362, 371–72, 670 P.2d 463, 472–73 (1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984), this Court addressed this issue and held that I.C. § 19–2515 does not require the judge to set out each and every circumstance presented in mitigation. Instead, the statute "requires the judge to list that evidence which, in his capacity as fact finder, he has found to be valid, competent and pertinent to the issue of whether the death penalty should be imposed." *Id.* The record shows that the district court's consideration of the mitigation circumstances in this case comported with *Creech.*

■ Next, Row asserts that the district court incorrectly considered the family relationship between Row and the victims by sometimes referring to Row as a mother and to the deceased youngsters as her children. However, throughout the proceedings, including the sentencing proceedings, Row's counsel attempted to portray her as a "good mother" who loved her children. In fact, the district court noted that a mitigating circumstance was that Row "has been previously described and viewed as a 'good mother'" and was viewed as a caring and loving mother.

We conclude that the district court's discussion of Row's motherhood was in response to mitigation circumstances raised by Row. The district court's consideration of such mitigating evidence was to Row's favor, and in no way suggests any prejudice or discrimination by the district court. Thus, it was not improper for the district court to consider the relationship between Row and the victims while viewing the case in the context of a multiple murder situation.

**C. Automatic Sentence Review Under I.C. § 19–2827.**

■ In addition to the issues raised by Row, this Court is required by statute to review the record of the trial and sentencing proceedings in light of the mandate in Idaho Code § 19–2827(c). *State v. Wells*, 124 Idaho 836, 837, 864 P.2d 1123, 1124 (1993). Under Idaho Code § 19–2827(c)(3), this Court must review the district court's imposition of the death penalty in every case to specifically determine if the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and whether the evidence supports the judge's finding of an aggravating circumstance. *State v. Sivak*, 127 Idaho 387, 393, 901 P.2d 494, 500 (1995); *State v. Fields*, 127 Idaho 904, 908 P.2d 1211 (1995). After careful review of the record of the trial and the sentencing hearing, we conclude that the district court did not impose the death penalty upon Row under the influence of passion, prejudice, or any other arbitrary factor. In addition, the evidence presented at the trial and the sentencing hearing and in the presentence investigative report, support the district court's finding of the "multiple murders" aggravator found in I.C. § 19–2515(g)(2).

**D. The District Court's Instruction Defining the Concept of Reasonable Doubt Was Not Reversible Error.**

■ Row asserts that the district court's instruction defining reasonable doubt was erroneous and denied Row her right to due process. In addition, Row argues that, aside from federal constitutional concerns, the Idaho Constitution requires that the jury be given the instruction found in *State v. Holm*, 93 Idaho 904, 478 P.2d 284 (1970), and that to depart from that instruction amounts to reversible error. Row submits that the *Holm* decision approved the reasonable doubt instruction then found in California Jury Instruction 2.90 and requires such instruction. *See also State v. Rhoades*, 121 Idaho 63, 82, 822 P.2d 960, 979 (1991); *State v. Cotton*, 100 Idaho 573, 577, 602 P.2d 71, 75 (1979). We find no reversible error, however, and affirm the district court's reasonable doubt instruction under *State v. Hoffman*, 123 Idaho 638, 643, 851 P.2d 934, 939 (1993).

■ The instruction given in *Holm* has since been included as No. 103 in the Idaho

Criminal Jury Instructions (I.C.J.I.). Nonetheless, even if the trial court inappropriately fails to give the approved instruction, this Court's review focuses upon whether the instruction that was given to the jury misstated the law or was so confusing and argumentative as to mislead the jury. *State v. Rhoades*, 121 Idaho at 82, 822 P.2d at 979. The United States Constitution does not dictate that any particular form of words be used in advising the jury of the State's burden of proof, so long as "taken as a whole, the instructions correctly conve[y] the concept of reasonable doubt." *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954).

■■■ Whether the instruction regarding reasonable doubt given to the jury is proper presents a question of law over which the appellate court exercises free review. *State v. Roll*, 118 Idaho 936, 938, 801 P.2d 1287, 1289 (Ct.App.1990). When reviewing jury instructions, this Court must first ask whether the instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *State v. Enno*, 119 Idaho 392, 405, 807, P.2d 610, 623 (1991); *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct.App.1993). To be reversible error, an instruction must have misled the jury or prejudiced the complaining party. *Salinas v. Vierstra*, 107 Idaho 984, 991, 695 P.2d 369, 376 (1985).

In the instant case, the district court used verbatim the reasonable doubt instruction that had been approved by this Court in *State v. Hoffman*, 123 Idaho 638, 643 n. 3, 851 P.2d 934, 939 n. 3. The *Hoffman* decision was released in January of 1993, two months prior to Row's trial. It appears that the district court therefore relied on this Court's most recent approval at that time of a reasonable doubt instruction. In *Hoffman*, this Court held that the reasonable doubt instruction given to the jury was "substantially the same" as the instructions approved in *State v. Rhoades, supra* and *State v. Cotton, supra. Hoffman*, 123 Idaho at 643, 851 P.2d at 939. This Court held that this instruction did not violate the defendant's due process rights, therefore, the instruction was not erroneous. *Id.* Taken as a whole, the reasonable doubt

instruction provided in this case, fairly and accurately conveyed the concept of reasonable doubt and did not violate the due process guarantee of Art. 1, § 13 of the Idaho Constitution.

## IV.

## POST-CONVICTION ISSUES

**A. The District Court did not err in Denying Row's Request for an *Ex Parte* Procedure for the Approval of Expert Assistance in the Post–Conviction Hearing.**

■■■ Prior to the commencement of post-conviction proceedings, Row requested the district court either appoint a "money judge" or allow *ex parte* applications for expert assistance. Row contends that a procedure for *ex parte* application to a "money judge" was necessary to preserve her attorney-client confidentiality and privilege against self-incrimination. She asserts that otherwise, in order to obtain necessary assistance, she would be forced to give up confidential information or risk developing evidence to be used by the State. Row also argues that the district court erred in refusing to grant her request for expert assistance.

■■■ In determining whether to provide additional assistance at public expense, this Court has held that such assistance is not "automatically mandatory, but rather depends upon [the] needs of the defendant as revealed by the facts and circumstances of each case." *State v. Powers*, 96 Idaho 833, 838, 537 P.2d 1369, 1374 (1975). It is incumbent upon the trial court to consider the needs of the defendant and the facts and circumstances of the case, and then decide whether an adequate defense is available to the defendant without the assistance of the requested expert or investigative aid. *State v. Olin*, 103 Idaho 391, 395, 648 P.2d 203, 207 (1982). Such "a denial of a defendant's request for expert assistance or investigative assistance will not be disturbed absent a showing that the trial court abused its discretion by rendering a decision which is clearly erroneous and unsupported by the circum-

stances of the case." *Id.* The same principles ought to apply in considering the requests of an applicant in a post-conviction proceeding. Consequently, the district court's decision will not be disturbed on appeal unless Row can show that the district court abused its discretion.

In the case at bar, Row was allowed to file a sealed request for assistance. The State was not allowed to view this motion, and was uninformed as to the specific details of the motion other than the fact that Row was requesting funds for additional expert assistance. The district court considered the motion, but denied the request because Row failed to make the particularized showing required. The district court held that the assistance of an additional expert was not necessary in this particular case, viewed in light of counsel's expertise. The district court concluded that at this stage of the proceeding—the post-conviction hearing—such assistance was not necessary in order to protect Row's rights. We agree.

First, we conclude that Row has failed to demonstrate any prejudice from the district court's refusal to implement *ex parte* proceedings. The district court did not prohibit Row from presenting her requests. The district court ruled only that the requests would not be presented to a "money judge" or in *ex parte* proceedings. Row was allowed to submit the motion under seal, and in no way "tipped her hand" to the State. In fact, the State was ignorant as to the details of Row's request other than that she was requesting funds for expert assistance.

Second, we hold that the district court did not abuse its discretion in denying Row's request for expert assistance. As the record reflects, Row had the benefit of two appointed counsel who ably presented Row's mitigating circumstances. Row's motion for a mitigation expert failed to demonstrate any basis for appointing additional expert assistance. Thus, we conclude that under the facts and circumstances in this case the district court did not abuse its discretion in denying Row's request for additional expert assistance.

**B. The District Court did not err in Denying Row's Request for a Continuance of her Post–Conviction Hearing.**

Row argues that her counsel was not prepared for the trial of her post-conviction proceeding, and the district court erred in denying her request for a continuance. Row asserts that her counsel was investigating mental health issues, and her mitigation expert needed more time to complete an investigation.

The decision to grant or to deny a continuance rests with the sound discretion of the district court. *State v. Tapia,* 127 Idaho 249, 255, 899 P.2d 959, 965 (1995). Row has the burden of showing that the district court abused its discretion by denying the continuance of the post-conviction hearing. *State v. Rhoades,* 120 Idaho at 812, 820 P.2d at 684. A bare claim that additional investigation could have been conducted is not sufficient to demonstrate unfair prejudice so as to support a motion for a continuance. *State v. Tapia,* 127 Idaho at 255, 899 P.2d at 965, *citing State v. Spradlin,* 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct.App.1991). Unless an appellant can show that his substantial rights were prejudiced by reason of a denial of his motion for continuance, the appellate court will conclude that there was no abuse of discretion by the trial court in denying the motion. *State v. Laws,* 94 Idaho 200, 202, 485 P.2d 144, 146 (1971).

In the present case, after weighing Row's previous delays and the speculative nature of the additional evidence, the district court denied Row's motion for a continuance. From the date Row filed her application for post-conviction relief on March 17, 1994, to the date of the district court's decision to deny Row's petition for post-conviction relief, March 11, 1996, nearly two full years had passed, and Row had already received several extensions of time. We conclude that Row has not shown that the district court abused its discretion by denying the continuance.

**C. Trial Counsel was not Deficient in the Presentation and Argument for Motion to Suppress Statements to Joan McHugh.**

On Friday, March 20, 1992, Row was being held in the Ada County Jail on a theft

charge. While she was being held on that charge, the arson and murder investigation continued. As part of the investigation, Detective Raney suggested to McHugh that she put a tape recorder on her telephone to record conversations between herself and Row, if Row happened to call.

On the same day, at 11:30 a.m., the State presented probable cause to a magistrate for three counts of first-degree murder, and a warrant was issued for Row's arrest. That afternoon at 1:00 p.m., there was a press conference announcing the filing of the criminal complaint. At or about the same time as the press conference, Row found out that charges were going to be filed against her, and she telephoned McHugh from the Ada County Jail. At the suggestion of Detective Raney, McHugh told Row that she had awakened during the night of the fire and had gone downstairs, but could not find Row in the residence. Row told McHugh that she was not inside the residence on that night, but stated that she was outside talking to her psychiatrist. Row telephoned McHugh again at 2:05 p.m., and reiterated that she had been talking to her psychiatrist at 4:30 a.m., on the night of the fire. On Monday, March 23, at 10:00 a.m., Detective Raney appeared at the Ada County Jail, advised Row that she was under arrest for three counts of first-degree murder, and read the arrest warrant to Row. Row made her initial appearance before the magistrate later that afternoon at 1:00 p.m.

On appeal, Row contends that her trial counsel were deficient in handling her motion to suppress statements made to Joan McHugh while she was incarcerated on the unrelated theft charge. Row asserts that trial counsel should have challenged the statements on the basis of the delay in charging and arraigning her. The district court found that trial counsel were not deficient in raising the issue, and decided that the court ultimately would have denied the motion on this additional ground anyway.

█ The standard established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for a claim of ineffective assistance of counsel encompasses two requirements: the defendant must show that counsel's performance was deficient, and

that the deficient performance prejudiced the defense. 466 U.S. at 687, 104 S.Ct. at 2064. To prove that counsel's performance was deficient, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *State v. Higgins,* 122 Idaho 590, 601, 836 P.2d 536, 547 (1992). Moreover, to meet the second prong of the test, the defendant must prove prejudice. To meet this prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 602, 836 P.2d at 548, *quoting Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

Here, the district court denied post-conviction relief based on the fact that Row's statements to McHugh did not require suppression under *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The district court held that there was no constitutional delay in charging Row with the three counts of murder; there was no conscious effort by the State to delay charging her as a ruse to entice Row to make potentially incriminating statements, and it was Row who voluntarily made the phone calls to McHugh.

█ In addition, the district court held that there was no unlawful delay under the constitution or the rules with respect to Row's initial appearance following her arrest on the murder charges. Rule 5 of the Idaho Criminal Rules requires an initial appearance before a magistrate within twenty-four hours, excluding Saturdays and Sundays. Specifically, I.C.R. 5(b) provides that "[a] defendant *arrested,* whether or not pursuant to a warrant, shall be taken before a magistrate in that judicial district without unreasonable delay. In no event shall the delay be more than twenty-four (24) hours *following the arrest,* excluding Saturdays, Sundays, and holidays." (Emphasis added.) Row was arrested for murder at 10:00 a.m. on Monday, March 23, and she promptly appeared before the magistrate that same day at 1:00 p.m.

within the time frame authorized by the rule. The fact that she somehow learned of the press conference and that she was going to be charged with the murder, on the preceding Friday, March 20, does not violate Rule 5. The twenty-four-hour time period did not begin to run until Row was arrested, which occurred on March 23. Consequently, the district court correctly held that there was no delay in providing Row with her initial appearance.

We conclude that the district court properly held that Row's request to suppress the evidence of her statements to McHugh on the grounds asserted would not have been granted. Accordingly, we hold that Row has failed to meet the second prong of the *Strickland* test. Row has failed to show that counsel's presentation of her suppression motion, or lack thereof, prejudiced her.

### D. Trial Counsel was not Deficient in the Preparation and Presentation of Mitigation Evidence in Capital Sentencing Proceedings.

 Row contends that her counsel was deficient in the preparation and presentation of mitigation evidence because counsel failed to perform an adequate investigation into Row's background in search of mitigating evidence. Specifically, Row submits that counsel should have investigated her life from birth to the sentencing hearing, that counsel were deficient in presenting her mental health workup, and that counsel were deficient in allowing Row's allocution statement.

Again, the standard for a claim of ineffective assistance of counsel is established by *Strickland v. Washington*: the defendant must show (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. This Court previously has held that strategic decisions and judgments by counsel will not be second-guessed on appeal unless found to be objectively unsound. *State v. Leavitt*, 116 Idaho 285, 291, 775 P.2d 599, 605 (1989); *State v. Charboneau*, 116 Idaho at 138, 774 P.2d at 308.

In addressing Row's assertions of ineffective assistance of counsel, the district court held that trial counsel completed ordinary and reasonable discovery, sifting through volumes of documents, reports, and evaluations. The district court noted that "the fact that counsel could have done *more* does not mean that they did not do *enough*." The district court held that it took into consideration every facet of background information in one form or another, and that Row failed to put forth any new or additional evidence which would have impacted the district court's decision.

 We affirm the district court and conclude that counsel did go to great lengths to present evidence from several of Row's friends, Health and Welfare records from the state of California, letters from friends and family, and Veteran's Administration records concerning her husband's previous injuries and the couple's relationship. Counsel was not required to investigate Row's entire life in order to objectively and reasonably present Row's mitigation evidence. Trial counsel's decisions concerning Row's mental health and her allocution statement were strictly strategic and shall not be second-guessed by this Court. Finally, we note that Row has failed to provide a record of any evidence which was not presented by trial counsel, thus failing to show any prejudice.

## V.

### CONCLUSION

After carefully considering the issues presented by Row challenging the imposition of the death penalty and the issues raised regarding her application for post-conviction relief, and having performed the statutorily required review of the death sentence, we affirm the judgments of conviction and the sentence of death imposed upon Robin Lee Row.

TROUT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.