51 P.3d 443
**STATE of Idaho,**

v.

**Lyle F. PACIOREK.**

**No. 27303.**

Court of Appeals of Idaho.

May 14, 2002.

Review Denied July 31, 2002.

William M. Appleton, Coeur d'Alene, for appellant.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

Lyle F. Paciorek stands convicted of public display of simulated masturbation, a misdemeanor. On appeal, he contends that the charge should have been dismissed because the statute under which he was prosecuted prohibits the display of only actual masturbation, not simulated masturbation. Alternatively, he also argues that he is entitled to a new trial because the magistrate court erroneously admitted evidence of another, uncharged incident of simulated masturbation by Paciorek, committed other errors in evidentiary rulings, and gave the jury conflicting instructions regarding the mental element of the offense. We find no reversible error and therefore affirm.

## BACKGROUND

The charge against Paciorek was based on information reported by two girls, sixteen-year-old S.L. and ten-year-old K.C. According to that information, the girls were returning to S.L.'s car in the parking lot of a shopping mall on April 13, 1999, when they saw Paciorek in the driver's seat of his car, which was parked nose to nose with S.L.'s car. S.L. recognized Paciorek from an encounter a month earlier, which will be further discussed below. The girls saw that Paciorek, seated in the driver's seat of his automobile, was moving his arm up and down in a manner of exaggerated simulation of masturbation. According to the girls, he was holding his hand with his fingers and thumb curved in a circle, as though he were holding an invisible tube, and pumping his hand up and down over his lap, while maintaining eye contact with S.L. and smiling at her. The hand motion and smiling at S.L. continued as she and K.C. entered S.L.'s car and drove away. S.L. noted Paciorek's license plate number and reported the incident.

Paciorek was charged with public display of offensive sexual material in violation of I.C. § 18–4105, a misdemeanor. He moved to dismiss the charge on the basis that publicly simulating masturbation is not prohibited by § 18–4105, but the motion was denied. Paciorek was convicted of the offense after a jury trial. He appealed to the district court, which affirmed the conviction.

On appeal to this Court, Paciorek complains that the magistrate erred in denying his motion to dismiss the charge and committed several trial errors.

## ANALYSIS

### A. Motion to Dismiss

■ Paciorek first contends that his motion to dismiss the charge should have been granted because I.C. § 18–4105(b) does not forbid the display of simulated masturbation. As pertinent to this case, § 18–4105 provides:

> Any person who knowingly exhibits or displays or permits to be exhibited or displayed any of the following in such a man-

ner that such exhibit or display is easily visible from any street, sidewalk, thoroughfare, or other public area; or is visible from any transportation facility; or is visible from any residence when the person knows that the owner or occupant of such residence objects to such exhibit or display:

. . . .

(b) An actual or simulated sex act, or sexual contact between humans and animals, or masturbation, or any graphic or pictorial display thereof;

. . . is guilty of a misdemeanor.

According to Paciorek, the adjective "simulated" in subsection (b) modifies only "sex acts" but not "masturbation" or the other acts described in that subsection. In other words, he contends that the statute criminalizes the public display of actual or simulated sex acts, but only *actual* sexual contact between humans and animals and *actual* masturbation. He bases this argument upon the grammatical implications of the placement of commas and the disjunctive "or" after the term "sex act." To support his position, he relies upon rules of grammar and sentence construction set out in handbooks of writing style and English grammar.

The presentation of this issue places upon us the task of interpreting the statute so as to give effect to the underlying legislative intent. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Knott,* 132 Idaho 476, 478, 974 P.2d 1105, 1107 (1999). In this task, we are "guided by general principles of statutory construction and a common sense appraisal of what the legislature intended." *Lawless v. Davis,* 98 Idaho 175, 176, 560 P.2d 497, 498 (1977). In interpreting a statute, we are to seek a sensible construction that will avoid an absurd result. *Gavica v. Hanson,* 101 Idaho 58, 60, 608 P.2d 861, 863 (1980) (overruled on other grounds by *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986)); *State v. Thompson,* 130 Idaho 819, 822 n. 4, 948 P.2d 174, 177 n. 4 (Ct.App.1997). To determine legislative intent, we examine not only the literal words of the statute, but also the context of those words, the public policy behind the statute, and any pertinent legislative history. *Mes-*

*senger v. Burns,* 86 Idaho 26, 29–30, 382 P.2d 913, 915 (1963); *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001). When an ambiguous statute is part of a larger statutory scheme, we not only focus upon the language of the ambiguous statute, but also look at other statutes relating to the same subject matter and consider them together in order to discern legislative intent. *State, Dep't of Health & Welfare ex rel. Lisby v. Lisby,* 126 Idaho 776, 779, 890 P.2d 727, 730 (1995); *Killeen v. Vernon,* 121 Idaho 94, 97, 822 P.2d 991, 994 (1991); *Smith v. Dep't of Employment,* 100 Idaho 520, 522, 602 P.2d 18, 20 (1979); *State v. Evans,* 134 Idaho 560, 564, 6 P.3d 416, 420 (Ct.App.2000). Although rules of sentence structure and grammar are a legitimate consideration in this endeavor (*see State v. Troughton,* 126 Idaho 406, 411, 884 P.2d 419, 424 (1994)), ultimately our task is to interpret the statute not as a professor of English grammar would parse it but as the legislature intended it.

Having considered all of the foregoing factors, we conclude that § 18–405(b) prohibits the public display of simulated masturbation. In our view, the interpretation urged by Paciorek leads to an absurd result. According to Paciorek, as to sex acts between two humans, the statute bars the actual or simulated display or a graphic or pictorial display of that activity, but as to masturbation and bestiality, it bars only performance of the actual act or a graphic or pictorial display, while leaving simulated masturbation or bestiality unrestricted. We find it nonsensical to suggest that the legislature was less concerned with the display of simulated acts of masturbation and bestiality than with simulated human sexual intercourse, or that the legislature was more concerned with a pictorial display of masturbation and bestiality than with a live simulation of those acts.

This conclusion is undergirded by consideration of the context of § 18–4105 within Title 18, ch. 41 of the Idaho Code. In chapter 41, the legislature undertook to prohibit the sale and distribution of obscene matter, I.C. § 18–4103; the advertisement or promotion for sale of matter represented to be obscene, I.C. § 18–4103A; and the presentation of obscene live conduct in a public place, I.C.

§ 18–4104; as well as the offense for which Paciorek was prosecuted, the public display of offensive sexual material, I.C. § 18–4105. It is noteworthy that the statute prohibiting the presentation of obscene live conduct in a public place expressly encompasses the simulating or pantomiming of masturbation. *See* I.C. §§ 18–4101(I)(2)(b), 18–4104. In light of this complementary statute and the breadth of the overarching statutory scheme, it would defy logic to conclude that the legislature intentionally omitted from the prohibitions of § 18–4105 the public display of simulated masturbation.

Accordingly, we conclude that the magistrate correctly interpreted I.C. § 18–4105(b) to criminalize the conduct of which Paciorek was accused and correctly denied Paciorek's motion to dismiss the charge.

## B. Evidence of Previous Similar Behavior

▪ During Paciorek's trial the State offered evidence that, about a month before the incident in the mall parking lot, S.L. had seen Paciorek engaging in similar behavior. This evidence was admitted over Paciorek's objection. According to this testimony, S.L. was driving on an interstate highway when she noticed Paciorek following her, bringing his vehicle abnormally close to hers. Looking through her rearview mirror, she observed that he was moving his arm up and down in a repetitive manner consistent with masturbation, though she could not see his hands. She said that the man was smiling toward her, and that when she changed lanes, he followed. He continued following her vehicle when she exited the highway and until she parked her car. S.L. testified that the man she saw on that occasion was the same man, driving the same vehicle, that she saw on April 13 in the mall parking lot.

Paciorek argues that this evidence was made inadmissible by Idaho Rule of Evidence 404(b), which prohibits evidence of other misconduct in order to prove a person's bad character and conduct in conformity with that character.

We conclude that the evidence was properly admitted, for Rule 404(b) expressly allows admission of other bad acts evidence when it is offered for a purpose other than to show character. Permissible purposes include proof of the actor's mental state such as intent, knowledge or motive, and to show the absence of mistake. I.R.E. 404(b). In this case, it was the State's burden to prove that Paciorek undertook the arm movements observed by S.L. and K.C. as a knowing display of simulated masturbation, *see* I.C. § 18–4105, and not as some innocent activity that was misinterpreted by the girls. S.L.'s testimony that she saw Paciorek on another occasion exhibiting the same arm motions suggestive of masturbation is probative to show that Paciorek's act in the parking lot was not innocent or mistakenly interpreted but was a knowing and intentional pantomime of sexual behavior. In addition, the Idaho Supreme Court has held that, due to the particular proof problems in sex offense cases involving minor victims, evidence of other, similar misconduct by the defendant is admissible to corroborate the victim's testimony. *State v. Tolman*, 121 Idaho 899, 905, 828 P.2d 1304, 1310 (1992). We therefore hold that the magistrate did not err in admitting S.L.'s testimony about her prior observation of Paciorek exhibiting behavior similar to the charged offense.

## C. Jury Instructions

▪ Paciorek next asserts error in the instructions to the jury because the court gave two distinct definitions of the term "knowingly."

The statute that Paciorek was charged with violating specifies that it is a misdemeanor for any person to knowingly exhibit or display the designated objects or conduct. The Idaho Legislature provided a specific definition of "knowingly" as used in that statute and others within Title 18, ch. 41 of the Idaho Code. That definition states:

"Knowingly" means having actual or constructive knowledge of the character of the subject matter or live conduct. A person shall be deemed to have constructive knowledge of the character of the subject matter or live conduct if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the matter, and the failure to

inspect the contents is either for the purpose of avoiding such disclosure or is due to reckless conduct.

I.C. § 18–4101(F). Elsewhere in Title 18 there is another definition of "knowingly" that is generally applicable to Idaho criminal statutes. It specifies:

> The word "knowingly," imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission.

I.C. § 18–101(5). In the instructions given to the jury, the court included Instruction 4 defining "knowingly" based upon § 18–101(5),[1] as well as Instruction 9 quoting the definition of "knowingly" from I.C. § 18–4101(F). Paciorek asserts that these two instructions are contradictory and that use of Instruction 4 constitutes reversible error.

■■■■■ This Court exercises free review in determining whether jury instructions are erroneous. *State v. Row,* 131 Idaho 303, 310, 955 P.2d 1082, 1089 (1998). We examine whether the instructions as a whole, and not individually, fairly and adequately reflect the applicable law. *State v. Keaveny,* 136 Idaho 31, 33, 28 P.3d 372, 374 (2001); *Row,* 131 Idaho at 310, 955 P.2d at 1089. If contradictory jury instructions are given on a material issue, the error is prejudicial, for an error in one instruction cannot be cured by reference to a correct statement of the law in another. *State v. Andrus,* 118 Idaho 711, 716, 800 P.2d 107, 112 (Ct.App.1990).

■■■■ We are in agreement with Paciorek that an instruction on the definition of "knowingly" from I.C. § 18–101(5) should not have been used. When the legislature has prescribed a specific definition of a term used in a particular statute or group of statutes, it is that definition which governs in the enforcement of the subject statutes. Therefore, it is the definition of "knowingly" found in I.C. § 18–4101(F) that applies to the prosecution of Paciorek under I.C. § 18–4105.

An instruction on any other definition of the same term was inappropriate.

■■■■ Whether this error in the instructions requires reversal of Paciorek's conviction depends upon whether the error was misleading to the jury or prejudicial to the defense. *See State v. Luke,* 134 Idaho 294, 300, 1 P.3d 795, 801 (2000). *State v. Page,* 135 Idaho 214, 221, 16 P.3d 890, 897 (2000); *State v. Crowe,* 135 Idaho 43, 45, 13 P.3d 1256, 1258 (Ct.App.2000). If the error did not affect Paciorek's substantial rights, it will be deemed harmless. Idaho Criminal Rule 52; *State v. Hanson,* 130 Idaho 842, 843, 949 P.2d 590, 591 (Ct.App.1997); *State v. Rodgers,* 119 Idaho 1066, 1071, 812 P.2d 1227, 1232 (Ct.App.1990). We conclude that the error here was harmless. Although Paciorek broadly characterizes the two definitions of "knowingly" as "contradictory," he has identified no specific components of the definitions that contradict each other. Indeed, at oral argument Paciorek's counsel conceded that he could not specify how the two instructions are inconsistent or how the use of Instruction 4 prejudiced his client. Upon careful examination of the two definitions, we are unable to discern any way in which Instruction 4 could have misled the jury or prejudiced Paciorek. Therefore, the error does not call for reversal of Paciorek's conviction.

### D. Cumulative Errors

■■■ Finally, Paciorek argues that an accumulation of evidentiary errors by the trial court deprived him of a fair trial. He contends that the magistrate repeatedly erred in overruling Paciorek's objections to leading questions, his relevancy objections to S.L.'s testimony about Paciorek's facial expression during their encounter, and his objections that many of the prosecutor's questions called for speculation or were argumentative.

■■■■ Questions concerning the relevance of evidence are matters of law, which we review *de novo,* but other issues on the admissibility of evidence are reviewed for an

---

1. Instruction 4 stated:

The word "knowingly," as used in my instructions, imparts only a knowledge of the existence of the facts in question, when those facts are such as bring the act or omission within the provision of the law. The word does not require in its meaning any knowledge of the unlawfulness of such act or omission.

abuse of discretion. *State v. MacDonald,* 131 Idaho 367, 369, 956 P.2d 1314, 1316 (Ct. App.1998). The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's constitutional right to due process. *State v. Gray,* 129 Idaho 784, 803–04, 932 P.2d 907, 926–27 (Ct.App.1997). In order to find cumulative error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial. *State v. Lovelass,* 133 Idaho 160, 171, 983 P.2d 233, 244 (Ct.App.1999). Errors in the admission of evidence will be deemed harmless if the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the errors. *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Brazzell,* 118 Idaho 431, 435, 797 P.2d 139, 143 (Ct.App.1990).

We have examined each of the claimed errors in the magistrate's evidentiary rulings and conclude that Paciorek's objections as to the admissibility of certain evidence were properly overruled. There was merit in some of Paciorek's objections that the prosecution's questions were leading, but in our judgment the magistrate's failure to require the prosecutor to rephrase those questions was not sufficiently prejudicial, even when the errors are aggregated with each other and with the error in giving Jury Instruction 4, to have affected Paciorek's substantial rights or to have denied him a fair trial. We are confident that the jury would have rendered the same verdict had the errors not occurred.

### III.

### CONCLUSION

The conduct for which Paciorek was prosecuted falls within the parameters of I.C. § 18–4105(b). Therefore, his motion to dismiss the charge was properly denied. Paciorek has pointed out minor errors in the jury instructions and in rulings on his objections to the prosecutor's leading questions, but these irregularities do not rise to the level of reversible error. Therefore, the judgment of conviction is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.